184 N.J. Super. 561 (1982)
446 A.2d 1229
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS J. CORRADO, JR., DEFENDANT-APPELLANT. IN THE MATTER OF THOMAS J. CORRADO, JR.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1982.
Decided May 27, 1982.
*563 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Charles I. Brodsky argued the cause for appellant, and on the briefs.
In A-1717-80-T1 William J. Zaorski, Assistant Prosecutor, argued the cause for respondent (Alexander D. Lehrer, Monmouth County Prosecutor; Mark P. Stalford, Assistant Prosecutor, of counsel).
In A-3644-80-T1 Anne R. Simonoff, Deputy Attorney General, argued the cause for the Director of the Division of Motor Vehicles (Irwin I. Kimmelman, Attorney General of New Jersey; James J. Ciancia, Assistant Attorney General, of counsel, Anne R. Simonoff on the brief).
PER CURIAM.
Two appeals by defendant arise out of his convictions of drunk driving and other motor vehicle offenses. The first appeal challenges his convictions of various motor vehicle offenses in the municipal court. The second appeal is from the revocation of defendant's driving privileges by the Director of Motor Vehicles (Director) because of his initial refusal to take a breathalyzer test even though he subsequently attempted to cure that refusal by offering to take the test. We have consolidated both appeals on our own motion for purposes of decision.
On April 28, 1980 defendant was issued four summonses returnable in the Borough of Red Bank Municipal Court, alleging various violations of the motor vehicle laws arising out of two motor vehicle accidents which occurred within five minutes of each other on that date. Following a trial the municipal court judge found defendant guilty of careless driving (N.J.S.A. 39:4-97); leaving the scene of the second accident which involved property damage (N.J.S.A. 39:4-129(b)), and driving while under the influence of alcohol (N.J.S.A. 39:4-50(a)). Defendant was acquitted of a charge that he left the scene of the first accident which resulted in personal injury (N.J.S.A. 39:4-129(a)).[1] *564 The municipal court judge imposed fines of $25 and costs of $15 on the convictions for careless driving and leaving the scene of the second accident. On the conviction for driving while under the influence of alcohol, he imposed a $500 fine, $15 costs and suspended defendant's driver's license for two years.
Defendant appealed his convictions to the Law Division pursuant to R. 3:23-8(a) and was again found guilty of the three violations. However, the trial judge merged the sentences for the convictions of careless driving and driving while under the influence of alcohol, imposing a $500 fine and $15 costs thereon and suspending defendant's license for one year. He further fined defendant $25 and imposed $15 costs for leaving the scene of an accident. Defendant now appeals those convictions, alleging that the trial judge erred in his determinations of guilt as to each offense. He also appeals directly to this court from the administrative determination by the Director of the Division of Motor Vehicles revoking his driving privileges. R. 2:2-3(a)(2).
The following factual scene was established below. At about 9:07 p.m. on April 28, 1980 Patrolmen James Clayton and Robert Colmorgen of the Red Bank Police Department received a radio communication from Police Sgt. Raymond Moore advising that a light-colored pickup truck was identified as the vehicle which at 9:03 p.m. had struck the front of a motor vehicle which was discharging a passenger. Shortly thereafter the patrolmen observed a truck of that description passing another car and travelling south in the northbound lane of Broad Street in Red Bank. The truck had one headlight on and appeared to have been in an accident. The officers followed the truck to Monmouth Street and stopped it a short distance from the police station. Although there did not appear to have been any erratic driving by defendant up to that point, the officers, based upon their conversation with defendant, concluded that defendant *565 was driving while under the influence of alcohol. Clayton testified that there was a strong odor of alcohol from defendant's breath, that his eyes were watery and bloodshot and that his eyelids were "droopy." Colmorgen stated that defendant had difficulty locating his personal papers in the vehicle and that he was holding on to the side of the truck until he was escorted to the police car. Defendant was arrested for driving under the influence of alcohol and taken across the street to the police station where he was issued a summons for leaving the scene of an accident. He was further charged with careless driving and leaving the scene of a second accident which occurred some time between the first accident and the time his vehicle was observed by the patrolmen.
At the police station the officers questioned defendant before a videotape camera regarding his involvement in the accidents and his consumption of alcohol during that evening. The videotape was entered into evidence at both trials and showed that at 9:25 p.m. defendant refused to take a breathalyzer test unless he could first consult with his attorney. This refusal was despite Clayton's repeated warnings that he was required by law to submit to such an examination. See N.J.S.A. 39:4-50.2. During the interrogation defendant stated that he had had two or three beers with dinner between 8:45 and 9 p.m. that evening and that he had taken medically prescribed Valium at 2 p.m. that day in connection with treatment for an injury he had suffered earlier that month. Defendant claims that after consulting his attorney by telephone from the police station he requested the breathalyzer test but this request, made at about 10:15 p.m., was refused by the police.
Defendant testified at the municipal court trial. Although he denied involvement in the earlier accident, he admitted that he was involved in a collision with another car at 9:07 p.m.[2] According to defendant, the other driver became frantic and *566 hysterical following the impact. When defendant did not see any policemen in the vicinity, and after he had assured himself that the other driver was not injured, he testified that he drove away to find an officer. It was at that point that he was stopped by Clayton and Colmorgen. The judge did not believe that testimony, and we do not disturb that finding. With regard to the charge that he was driving while under the influence of alcohol, defendant explained that he had suffered a head injury in Maine earlier that month and that he was currently being treated by a doctor for continuing effects thereof. He stated that he suffered from headaches, dizzy spells, memory lapses and a ringing in his ears, and further admitted that in addition to the accident at 9:07 p.m., he had been involved in two other motor vehicle accidents that same day in which he had rear-ended two other vehicles.
With respect to the accident which occurred at 9:03 p.m., Tina Bennett testified that she was getting out of a car in front of her house when a light-colored truck with an open back collided with the car and drove away. She could not identify the driver of the truck. Defendant denied knowledge of the earlier accident, and in acquitting defendant of that charge the municipal court judge specifically found that while defendant was involved in the 9:03 p.m. accident, he was not aware that he had struck the parked car from which Ms. Bennett was alighting.

I
We have fully examined the record and the arguments of counsel in light of defendant's contentions that the trial judge erred factually in finding him guilty of the remaining three charges. We find these contentions to be without merit. R. 2:11-3(e)(2). We are satisfied that the convictions for leaving the scene of the 9:07 p.m. accident, careless driving and driving while under the influence of alcohol are fully supported by *567 substantial credible evidence in the record. State v. Johnson, 42 N.J. 146, 162 (1964). Even in the absence of breathalyzer results, the testimony of the police officers regarding their observations and opinions based thereon was sufficient to establish that defendant was intoxicated. State v. Johnson, supra; State v. Hudes, 128 N.J. Super. 589, 607-608 (Cty.Ct. 1974); State v. Magai, 96 N.J. Super. 109 (Cty.Ct. 1967). Contributing factors of medication or physical or nervous conditions rendering defendant more susceptible to alcohol are not defenses if such factors caused or contributed to impairment of defendant's faculties. State v. Tamburro, 68 N.J. 414 (1975); State v. Glynn, 20 N.J. Super. 20 (App.Div. 1952).

II
The more troublesome issue is whether an individual who initially refuses a breathalyzer test may subsequently and within a reasonable time thereafter "cure" that refusal by agreeing to take the test.
The issue of whether there can be a "cure" of the refusal has not been expressly considered in any reported decision in this State. We have been referred to various out-of-state decisions in the briefs of counsel. The majority rule in those cases which have an implied consent statute like ours, see N.J.S.A. 39:4-50.2, is that the initial refusal is final and hence that there is no right to "cure" an initial refusal. See Zidell v. Bright, 264 Cal. App.2d 867, 71 Cal. Rptr. 111 (Ct.App. 1968); Krueger v. Fulton, 169 N.W.2d 875 (Iowa Sup.Ct. 1969); Mills v. Bridges, 93 Idaho 679, 471 P.2d 66 (Sup.Ct. 1970); Commonwealth v. Schaefer, 8 Pa.Cmwlth. 96, 300 A.2d 907 (1973); Harlan v. State, 113 N.H. 194, 308 A.2d 856 (Sup.Ct. 1973); In re Brooks, 27 Ohio St.2d 66, 271 N.E.2d 810, 812 (Sup.Ct. 1971); Peterson v. State, 261 N.W.2d 405 (S.D.Sup. Ct. 1977), and Seders v. Powell, 298 N.C. 453, 259 S.E.2d 544 (Sup.Ct. 1979).
Other jurisdictions have, however, refused to follow the line of cases represented by Zidell and Krueger. See Lund v. Hjelle, 224 N.W.2d 552 (N.D.Sup.Ct. 1974); Zahtila v. Motor Vehicle *568 Div., 560 P.2d 847 (Colo. App. 1977); Sedlacek v. Pearson, 204 Neb. 625, 284 N.W.2d 556 (Sup.Ct. 1979), and State v. Moore, 614 P.2d 931 (Hawaii Sup.Ct. 1980).
The cases expressing the majority view essentially turn on the question of the unreasonableness of having police officers turn aside from other duties to administer a test after the driver has initially refused.
The cases allowing a "cure" generally do so on the basis that a change of mind after a relatively short delay does not prejudice the presentation of the state's evidence nor defeat the purpose of the implied consent statute. In Lund v. Hjelle, supra, (224 N.W.2d 552), the Supreme Court of North Dakota affirmed the lower court's reversal of the commissioner's revocation of the motorist's license under the implied consent law of that state. Lund had been arrested around 8:30 p.m. and originally agreed to take the test, but changed his mind after the police brought him to the hospital. He was returned to the police station where he made several calls, and at about 9:30 p.m. requested to take the test. The court decided to allow a "cure" because it considered the object of the implied consent law was to determine the alcohol content of the blood of persons suspected of driving while intoxicated. Achievement of this objective was found not to depend upon the blood test being administered immediately after arrest or immediately upon the occurrence of the event, e.g., an accident, giving rise to the need to determine if a driver was intoxicated. Counsel for the commissioner conceded that a chemical test two hours after the arrest would have been accurate. The court was satisfied that the proofs established that there is a period of time after such an event during which a test will still be accurate. It held, therefore, that a delay for a reasonable period of time while an arrested person considers or reconsiders his decision will not frustrate the objective of the law provided certain conditions are met including, in addition to a reasonable period of time, that the test would still be accurate, that there would be no substantial inconvenience or expense to the police, and that defendant has *569 been in police custody and under observation for the whole time since his arrest. (Id. at 557).
We have considered the circumstances of this case and conclude that the policy of our implied consent law would be violated here if a cure was allowed. Corrado waited until after apparently an hour had elapsed and until he had talked with his attorney before he asked to take the test. Under State v. Pandoli, 109 N.J. Super. 1 (App.Div. 1970), he clearly had no right to do so.
... As a matter of law, defendant had no right to have the advice of an attorney before determining whether he would accede to the test, insofar as the sanction of revocation for refusal is concerned. See State v. Kenderski, 99 N.J. Super. 224, 229-230 (App.Div. 1968); Ent v. State, Department of Motor Vehicles [265 Cal. App.2d 936], 71 Cal. Rptr. 726 (Ct.App. 1968).
In any event, the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. See Ent v. State, Department of Motor Vehicles, supra. The occasion is not one for debate, maneuver or negotiation, but rather for a simple "yes" or "no" to the officer's request. [at 4].
We are therefore constrained to affirm the determination of the Director based on the precise factual complex before us.
The municipal court convictions are also affirmed.
NOTES
[1] A first conviction of this offense when personal injury is involved could result in imprisonment for 30 days; on a second conviction imprisonment for a period of three to six months is mandated.
[2] The driver of the other motor vehicle in the second accident did not testify at the municipal court trial. However, the prosecutor and defense counsel stipulated that the accident did take place and that defendant was not at the scene when the responding police officers arrived.