232 N.J. Super. 378 (1989)
556 A.2d 1339
STATE OF NEW JERSEY
v.
TIMOTHY GINNETTI, DEFENDANT.
Superior Court of New Jersey, Law Division Criminal, Atlantic County.
Decided March 3, 1989.
*379 Betsy Phillips, for plaintiff (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney).
Harry Goldenberg for defendant (Goldenberg, Mackler & Sayegh, attorneys).
PERSKIE, P.J.Cr.
On January 30, 1988, at approximately 8:15 a.m., defendant was operating a motor vehicle which became involved in an accident with another vehicle in Galloway Township. The road was icy; defendant's vehicle started to spin, and it left it's lane *380 of travel and crossed the center line where it hit a car proceeding in the opposite direction.
Patrolman Midgette of the Galloway Township Police Department was dispatched to the scene of the accident, where he found defendant alone in his vehicle in the driver's seat. Patrolman Midgette observed a strong odor of alcoholic beverage about defendant, and that defendant's face was flushed and his eyes appeared watery. Defendant complained of an injury to his knee from the accident, as a result of which no balance tests were administered at the scene. Defendant was arrested and charged with operating under the influence, and taken immediately to the nearby Atlantic City Medical Center for treatment of his injuries.
At the scene of the accident, after defendant's arrest, Patrolman Midgette advised defendant of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the medical center Patrolman Midgette read "Paragraph 36" of the drinking/driving influence report to defendant. This refers to a lengthy statement of defendant's obligation to submit to a chemical test of defendant's breath for the purpose of determining blood alcohol content, advises defendant that he is legally obligated to submit to such an examination, and that he has no right to consult with an attorney prior to the examination. In reading these provisions to defendant, Patrolman Midgette determined to substitute a request for a blood sample rather than a breathalyzer examination because: (1) he and defendant were in the medical center; (2) presumably medical personnel were immediately available to take the blood sample, and (3) the breathalyzer machine was located at police headquarters which was a short distance away from the medical center.
Defendant agreed to provide a sample of his blood for analysis, but when it shortly became evident that there would be some delay because appropriate medical personnel were not immediately available to take the blood sample defendant *381 changed his mind. Patrolman Midgette then re-advised defendant of his obligation to submit to a breathalyzer examination and advised defendant that, upon defendant's agreement to submit to the breathalyzer examination, Patrolman Midgette would cause the breathalyzer machine to be brought to the medical center from the police department. Patrolman Midgette advised defendant that the police department maintained a "portable" breathalyzer unit for this purpose. Defendant refused to submit to the breathalyzer examination and indicated he wished to speak with an attorney.
Upon defendant's refusal, Patrolman Midgette, who was seated with defendant at a desk in the Medical Center, proceeded to issue summonses for operating under the influence of alcohol, N.J.S.A. 39:4-50, and refusal to submit to a breathalyzer examination, N.J.S.A. 39:4-50.2, -50.4a. Upon presentation of the summonses to defendant, Patrolman Midgette permitted defendant to make or receive a telephone call from his attorney. Defendant spoke with his attorney while at the desk in Patrolman Midgette's presence. Upon speaking with his attorney defendant advised Patrolman Midgette that he again had changed his mind and would agree to submit to a breathalyzer examination. Defendant's agreement to take the breathalyzer examination occurred within five minutes of his initial refusal to do so. Patrolman Midgette refused to consider defendant's belated willingness to submit to the breathalyzer examination and the test was not administered.
In the municipal court defendant was acquitted of the charge of operating under the influence and convicted of the refusal to submit to the breathalyzer examination. The matter is before this court on defendant's appeal of that conviction. For the reasons which follow I am satisfied that defendant should be acquitted of the charge of refusing to submit to a breathalyzer examination.
The sole issue in this matter, the same "troublesome" question presented in State v. Corrado, 184 N.J. Super. 561 (App. *382 Div. 1982), is "whether an individual who initially refuses a breathalyzer test may subsequently and within a reasonable time thereafter `cure' that refusal by agreeing to take the test." Id. at 567.
In Corrado defendant was involved in an accident at 9:03 p.m. The police arrived at the scene within minutes and concluded that defendant was driving while under the influence of alcohol. He was arrested and taken across the street to the police station where he was charged.
At the police station defendant refused to take a breathalyzer test unless he could first consult with his attorney. The refusal occurred at 9:25 p.m., and followed repeated warnings from the police that he was required to submit to the examination. Approximately fifty minutes later, at about 10:15 p.m., defendant requested the police to administer a breathalyzer test after he had consulted with his attorney by telephone. This request was refused.
In analyzing the defendant's request to allow a "cure" for the refusal the Appellate Division noted that there was no right to seek legal advice prior to the administration of the breathalyzer test, and that defendant had waited until after apparently an hour had elapsed before he asked to take the test. Citing State v. Pandoli, 109 N.J. Super. 1 (App.Div. 1970), the Appellate Division noted that
the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so.... The occasion is not one for debate, maneuver or negotiation, but rather for a simple `yes' or `no' to the officer's request. [Corrado, supra 184 N.J. Super. at 569 (citing Pandoli, 109 N.J. Super. at 4).]
The Corrado court refused to allow a cure on the facts presented before it, concluding that "the policy of our implied *383 consent law would be violated here if a cure was allowed." Corrado, supra 184 N.J. Super. at 569.
I am satisfied that the rationale and determination of the Corrado decision do not apply to the facts of this case. Here defendant initially and immediately agreed to a blood test. In addition the breathalyzer machine was not present at the scene, and would have required transportation from the police department in any event. The "delay" of less than five minutes could not, as a practical matter, have caused any appreciable delay in the administration of the test or of any other police process. Patrolman Midgette had not moved from the desk where he had issued the summonses when defendant indicated a willingness to take the breathalyzer test. Although that willingness apparently resulted from the conversation with his attorney, and although he had no legal right to consult with counsel before taking the test, I am satisfied that on these particular and somewhat peculiar facts defendant's consent to take the test should have been acknowledged and accepted. On these facts such a determination does no violence to the "policy of our implied consent law" or to the remedial purposes of the statute. Nor, on these facts, would the integrity of the testing procedure have been adversely affected by the momentary delay.
The Corrado court considered itself "constrained to affirm the determination of the Director based upon the precise factual complex" presented in that case. Corrado, supra at 569. On the precise factual complex presented in this matter I am satisfied that defendant must be acquitted.
Defense counsel shall submit the appropriate order.