245 N.J. Super. 210 (1991)
584 A.2d 854
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GERARD BERNHARDT, JR. DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1990.
Decided January 10, 1991.
*212 Before Judges J.H. COLEMAN, DREIER and ASHBEY.
Stephen M. Hiltebrand argued the cause for appellant.
Frederick H. Martin, Assistant Prosecutor, argued the cause for respondent (Edward Borden, Jr., Prosecutor of Camden County, attorney, Frederick H. Martin of counsel and on the letter brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
This appeal requires us to decide whether a defendant who refuses to submit to a breathalyzer test must be permitted to "cure" the refusal within a reasonable period. We hold that a "cure" need not be permitted.
*213 The controlling facts are not complicated. On January 21, 1989, at approximately 2:07 a.m., New Jersey State Trooper John Daly observed defendant drive his automobile on the shoulder of the roadway on four or more occasions. When defendant was stopped and asked for his driver's license, registration and insurance card, Trooper Daly detected a strong odor of alcohol on defendant's breath. He was unable to perform any field sobriety tests. Defendant was arrested for driving while under the influence, contrary to N.J.S.A. 39:4-50, and he was given the Miranda[1] warnings. Defendant was then transported to the State Police barracks in Bellmawr.
While at the barracks, defendant was informed of his obligation to take a breathalyzer test and the consequences of a refusal. He was informed that he had no right to speak to an attorney before taking a breathalyzer test or to delay giving a breath sample. See State v. Sherwin, 236 N.J. Super. 510, 518-520, 566 A.2d 536 (App.Div. 1989). Defendant, however, insisted that he should be permitted to call his attorney before deciding whether to take the test. After declining to take the test following ten or more requests, defendant was told that unless he agreed to take the test, he would be charged with a refusal. When finally asked if he would submit to the test, defendant responded "[s]on, call my lawyer." At this point, defendant was informed that he was being charged with a refusal. He was then permitted to call his attorney. Immediately after speaking with his attorney, defendant agreed to take a breathalyzer test. Consistent with the prior warnings to defendant, the trooper declined to administer the test and issued defendant a summons charging him with a refusal. Trooper Daly's request to defendant to take a breathalyzer test was made within about 15 minutes after the arrest. Approximately four minutes elapsed between the trooper's request of *214 defendant to take the test and the time defendant agreed to take the test.
The Bellmawr Municipal Court found defendant not guilty of driving while under the influence of alcohol. The charge was amended at the close of the evidence to changing lanes improperly, a violation of N.J.S.A. 39:4-88(b). He was found guilty on the amended charge. Defendant was also found guilty of refusal to take the breathalyzer test. The judge found that defendant was obligated to give an unequivocal yes to the trooper's request to take the test. Upon his de novo appeal to the Law Division, defendant was again found guilty of a refusal, contrary to N.J.S.A. 39:4-50.4a.
On this appeal, defendant argues that he should have been permitted to cure his refusal since he agreed to take the test, albeit after speaking to his attorney, within five minutes of his refusal and while all the officers were still in the room with him. Defendant contends that he should be permitted to cure the refusal within a reasonable time. He concedes, and correctly so, that "one of the main concerns of the State in relation to these types of cases [taking of breath samples] is the preservation of evidence." Defendant places substantial reliance upon State v. Ginnetti, 232 N.J. Super. 378, 556 A.2d 1339 (Law Div. 1989), to support his claim that a cure ought to be permitted. He also relies upon State v. Tischio, 107 N.J. 504, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988), to buttress his argument that as long as the breathalyzer test is administered within a reasonable time after arrest, the State's interest is protected by preserving the evidence.
In State v. Ginnetti, supra, when defendant was asked to take a breathalyzer test, he refused. 232 N.J. Super. at 380-81, 556 A.2d 1339. At the time of refusal, the machine was not available for testing. Ibid. It was understood, however, that if defendant consented, a portable machine would be made available. Id. at 381, 556 A.2d 1339. A summons was issued *215 for refusing, contrary to N.J.S.A. 39:4-50.4a. In finding defendant not guilty on his de novo appeal, the Law Division emphasized the importance of the fact that the breathalyzer was not present at the scene and the defendant had "initially and immediately agreed to a blood test." Id. at 383, 556 A.2d 1339. The blood test was not performed because no medical personnel was available to take the blood sample immediately and that caused defendant to change his mind rather than wait. Ibid. Consequently, as both lower courts recognized in the present case, the acquittal in Ginnetti was based on much more than the fact that defendant agreed to take the breathalyzer within a few minutes after his refusal. To the extent that Ginnetti may be interpreted as permitting a cure, we disapprove.
The Supreme Court in State v. Tischio, supra, held that to be admissible as evidence, a breathalyzer test must have been taken within a reasonable time after a defendant's arrest. 107 N.J. at 521, 527 A.2d 388. The requirement that the test be administered within a reasonable time is intended to prevent "prolonged detention of a motorist by the police in the mistaken belief that the blood-alcohol level would then produce a result more favorable to the State." State v. Dannemiller, 229 N.J. Super. 187, 190, 550 A.2d 1303 (App.Div. 1988). Both Tischio and Dannemiller make clear that the reasonable time requirement relates to the use of breathalyzer test results as evidence in a prosecution for driving while under the influence, a violation of N.J.S.A. 39:4-50a, rather than a prosecution for refusing to take the breathalyzer test, a violation of N.J.S.A. 39:4-50.4a.
The elements of a violation for refusing to submit to a breathalyzer test are (1) that an arresting officer has probable cause to believe that the accused operated a vehicle while under the influence of alcohol, (2) an arrest of the accused for driving while under the influence of alcohol, and (3) the accused's refusal to submit to a breathalyzer test. State v. Wright, 107 N.J. 488, 490, 527 A.2d 379 (1987). In this appeal, defendant *216 contends only that the third element was not satisfied because of defendant's belated offer to take the test. The defendant in State v. Wright, supra, was found guilty of a refusal under N.J.S.A. 39:4-50.4a without proof of actual operation. Rather, his violation was based on probable cause to believe defendant had operated the vehicle while under the influence of alcohol.
The issue of whether to permit a cure of a refusal has been raised previously in State v. Corrado, 184 N.J. Super. 561, 446 A.2d 1229 (App.Div. 1982). In Corrado, we stated that "[t]he majority rule in those cases which have an implied consent statute like ours, see N.J.S.A. 39:4-50.2, is that the initial refusal is final and hence that there is no right to `cure' an initial refusal." Id. at 567, 446 A.2d 1229. (Citations omitted). Rather than clearly adopt a bright line rule in Corrado, we concluded that in the circumstances of that case, where the defendant had waited an hour before agreeing to take the breathalyzer test after speaking with his attorney, "the policy of our implied consent law would be violated here if a cure was allowed." Id. at 569, 446 A.2d 1229. Then we stated: "[u]nder State v. Pandoli, 109 N.J. Super. 1 [262 A.2d 41] (App.Div. 1970), he clearly had no right to do so." Ibid.
Before and since our decision in Corrado, our Supreme Court adopted bright line rules in many areas related to drunk driving. For example, there is no right to an attorney before taking a breathalyzer test. State v. Macuk, 57 N.J. 1, 15, 268 A.2d 1 (1970), and, State v. DeLorenzo, 210 N.J. Super. 100, 104, 509 A.2d 238 (App.Div.), certif. denied, 105 N.J. 507, 523 A.2d 154 (1986). Miranda warnings need not be given prior to administering a breathalyzer test. State v. Leavitt, 107 N.J. 534, 535, 527 A.2d 403 (1987). Similarly, a defendant has no legal right to refuse to take a breathalyzer test. State v. Macuk, supra, 57 N.J. at 15, 268 A.2d 1; State v. DeLorenzo, supra, 210 N.J. Super. at 106, 509 A.2d 238. Further, the blood-alcohol level at the time a breathalyzer test is administered, conclusively establishes a violation of N.J.S.A. 39:4-50a, *217 thereby rendering extrapolation evidence inadmissible. State v. Tischio, supra, 107 N.J. at 522, 527 A.2d 388.
Additionally, our Supreme Court held last term that involuntary intoxication cannot be used as an affirmative defense to a charge of drunk driving. State v. Hammond, 118 N.J. 306, 315, 571 A.2d 942 (1990). Courts must take judicial notice that breathalyzer tests are accurate and a reading of .10 establishes a per se violation of N.J.S.A. 39:4-50a. State v. Downie, 117 N.J. 450, 466-488, 569 A.2d 242, cert. denied, ___ U.S. ___, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). Finally, a defendant accused of violating N.J.S.A. 39:4-50a is not entitled to a jury trial. State v. Hamm, 121 N.J. 109, 577 A.2d 1259 (1990); State v. Graff, 121 N.J. 131, 577 A.2d 1270 (1990).
Left unanswered by our appellate courts thus far is whether a refusal may be "cured." Corrado strongly suggested that it should not be. We are persuaded that a bright line rule should be adopted, consistent with a growing majority of other jurisdictions with a similar implied consent law, which precludes a defendant from curing a refusal. See, e.g., Conrad v. Schwendiman, 680 P.2d 736 (Utah 1984); Schroeder v. State Dept. of Motor Vehicles and Public Safety, 772 P.2d 1278 (Nev. 1989); Dudenhoeffer v. Dir. of Rev., State of Mo., 780 S.W.2d 701 (Mo. App. 1989); Com., Dept. of Transp. v. Stay, 114 Pa.Cmwlth. 532, 539 A.2d 57 (1988); Mossak v. Comm. of Pub. Safety, 435 N.W.2d 578 (Minn.App. 1989); Webb v. Miller, 187 Cal. App.3d 619, 232 Cal. Rptr. 50 (1986); Wisch v. Jensen, 221 Neb. 609, 379 N.W.2d 755 (Neb. 1986). Such a rule clearly effectuates the Legislature's regulatory aims embodied in the implied consent law. We recognized as much when we adopted the bright line rule in State v. Sherwin, supra, 236 N.J. Super. at 515, 566 A.2d 536, holding that a defendant's silence when requested to take a breathalyzer test is legally equivalent to a refusal. To hold otherwise, would unduly burden police officers by requiring them to wait for an indefinite period in an attempt to be able to refute a defendant's assertion that although he or she *218 changed his or her mind and consented within a reasonable time, the police improperly disallowed a cure.
Further, permitting a cure hampers the State in the administration of its public policy of requiring the courts to work in tandem with the Legislature "to streamline the implementation" of laws designed to rid the highways of drunken drivers. State v. Tischio, supra, 107 N.J. at 514, 527 A.2d 388; State v. Stever, 107 N.J. 543, 557, 527 A.2d 408 (1987), cert. den. 484 U.S. 954, 108 S.Ct. 348, 98 L.Ed.2d 373 (1987). A bright line rule removes, rather than creates "obstacles impeding the efficient and successful prosecution of those who drink and drive." Ibid, quoting from State v. Tischio, supra, 107 N.J. at 514, 527 A.2d 388.
Beyond that, permitting a cure flies in the face of good sense and established legal notions. Ordinarily, a violation is complete when the proscribed act or omission has come to pass. See, e.g., Olympic, Inc. v. Director, Division of Alcoholic Beverage Control, Dept. of Law and Public Safety, 49 N.J. Super. 299, 308, 139 A.2d 768 certif. den. 27 N.J. 279, 142 A.2d 262 (1958). Once the violation has been committed, the accused cannot "undo" the violation except when permitted by the Legislature.[2] A compelling parallel to this case, if a cure were permitted, can be found in a case where a defendant is found in an intoxicated state while sitting in the driver's seat of the car, holding the ignition key in his or her hand. See State v. Mulcahy, 107 N.J. 467, 479, 527 A.2d 368 (1987); State v. Daly, 64 N.J. 122, 313 A.2d 194 (1973). Cf. State v. Sweeney, 40 N.J. 359, 360-361, 192 A.2d 573 (1963); State v. Stiene, 203 N.J. Super. 275, 496 A.2d 738 (App.Div. 1985); State v. Prociuk, 145 *219 N.J. Super. 570, 574, 368 A.2d 436 (Law Div. 1976). A rule that permits one accused of driving while under the influence of alcohol to cure a violation within a reasonable time, would mean that a suspected drunk driver caught behind the steering wheel of a car can "cure" if he or she gets out of the car within a few minutes and turns over the ignition key to the police officer, thereby indicating the suspect no longer has any intent to drive the vehicle. See State v. Tischio, supra, 107 N.J. at 513-514, 527 A.2d 388. This illustration highlights the unsoundness of permitting a cure because it would impede as well as frustrate our strong public policy of removing drunken drivers from our highways.
Since one of the remedial purposes of the implied consent law is the removal of drunk drivers from our highways, "anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. See Ent v. State, Department of Motor Vehicles [265 Cal. App.2d 936, 71 Cal. Rptr. 726 (Cal. App. 1968)]. The occasion is not one for debate, maneuver or negotiation, but rather for a simple `yes' or `no' to the officer's request." State v. Corrado, supra, 184 N.J. Super. at 569, 446 A.2d 1229, quoting from State v. Pandoli, supra, 109 N.J. Super. at 4, 262 A.2d 41. Once the defendant says anything except an unequivocal "yes" to the officer's request after the officer has informed the defendant of the consequences of a refusal, the defendant cannot legally cure the refusal. Prosecutions for drunk driving and for failure to give a breath sample are quasi-criminal proceedings and therefore notions of curing defects, as frequently occur in the commercial world pursuant to the Uniform Commercial Code, have no application absent a clear expression to the contrary by the Legislature.
We have considered the other contentions raised by defendant related to the "Confusion Doctrine" and find they are clearly without merit. R. 2:11-3(e)(2).
The judgment of conviction is affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Legislature knows how and when to be flexible respecting a violation of Title 39. Where a driver fails to produce a driver's license, registration or insurance card for the vehicle being operated when requested by a police officer, that person violates N.J.S.A. 39:3-29. But if the driver presents the required documents to the judge that were valid on the day of the offense, a cure is permitted except for court costs. Ibid.