**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3017-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL LYONS,

     Defendant-Appellant.

_____

        Submitted February 24, 2021 – Decided March 24, 2021

        Before Judges Ostrer and Vernoia.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Municipal Appeal No. 20-19.

        Buchan & Palo, LLC, attorneys for appellant (Kevin A. Buchan, on the briefs).

        Esther Suarez, Hudson County Prosecutor, attorney for respondent (Lillian Kayed, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Michael Lyons appeals from a Law Division order, entered after a trial de novo on an appeal from the Hoboken Municipal Court, finding him guilty of driving while driving under the influence of intoxicating liquor (DUI), N.J.S.A. 39:4-50(a); failure to report an accident, N.J.S.A. 39:4-130; and leaving the scene of an accident, N.J.S.A. 39:4-129(b).  Defendant argues his convictions should be reversed because the State failed to present evidence establishing the necessary elements of each offense.  Having reviewed the record and the parties' arguments, we are persuaded the evidence supports the court's finding defendant is guilty of DUI, but there is insufficient evidence supporting its determination defendant is guilty of leaving the scene of an accident and failure to report an accident.  We reverse defendant's convictions for the latter two offenses and affirm his DUI conviction.

I.

The State presented two witnesses during the municipal court trial. Hoboken Police Officer Edward Lepre testified that in that late evening of April 28, 2019, he was dispatched to the intersection of Third and Grant Streets to investigate a report of a vehicle striking a parked car several times.  He met a woman at the scene who provided a description of the vehicle.  He reported the

description to the dispatcher who then broadcasted it to the other officers on patrol.

The State also called Hoboken Police Officer Joseph Cahill as a witness at trial. He is a thirty-five-year veteran of the Hoboken Police Department and has extensive training in DUI investigations and the administration of field sobriety tests and Alcotest breath tests. Cahill was on duty on the evening of defendant's arrest. As part of his duties, he was assigned to pick up a police department dispatcher and transport the dispatcher to police headquarters.

As he drove to pick up the dispatcher, he observed a small gray SUV pass through an intersection. When he first observed the vehicle, Cahill "thought [it] didn't have [its] lights on," but after Cahill turned at an intersection and travelled behind the SUV, he observed the lights on the SUV turn on "just before" it stopped at a stop sign. Cahill stopped his vehicle to pick up the dispatcher, and he saw the SUV turn into a parking lot on Adams Street.

Cahill then heard the dispatcher broadcast a description of a "small gray SUV" with New Jersey license plates that "fled" the scene of the accident Lepre had investigated. Cahill transported the dispatcher to the police department and drove to the reported accident scene. He observed a parked vehicle with "[t]he left rear quarter panel and rear bumper . . . pushed in as if somebody was driving

in that area and struck" the vehicle. Cahill left the scene and went to the parking lot where he had earlier seen the small gray SUV enter.

Upon entering the lot, Cahill saw defendant standing outside of a small gray SUV. Defendant held onto the open driver's door and appeared to have just finished urinating. The vehicle's engine was running. Cahill observed defendant's "fly was undone," "[h]is pants were wet . . . from urinating," and "[t]here was a big puddle on the ground."

Cahill approached defendant. Cahill described defendant as "highly intoxicated." He asked defendant if the vehicle was his, and defendant said "yes." Cahill testified defendant had bloodshot and watery eyes, "had a very strong odor of alcoholic beverage flavoring," and could not stand in place. Defendant "sway[ed] back and forth" and held "onto the car for support." Defendant also "slurr[ed] his words," and, when Cahill asked for identification, defendant "went through his wallet several times passing his license before" handing it over. Cahill observed "damage on the right front side . . . of [defendant's] vehicle" that "would match up more or less with the same . . . damage on the . . . parked vehicle" at the alleged accident scene.

Cahill testified he arrested defendant but did not perform any field sobriety tests because defendant's inability to stand made the tests unsafe. While

4

Cahill placed handcuffs on defendant, defendant lost his balance, and it was necessary for Cahill to "grab" defendant to "do a controlled fall to the ground." By that time, other officers had arrived. Four officers were required to help defendant off the ground and place him in Cahill's vehicle. Once at the police station, four officers were required to remove defendant from Cahill's vehicle. After he was removed, "defendant fell to his knees," and four officers were required to get defendant to his feet.

After defendant entered the station, Cahill administered Alcotest breath tests.[1] During the process prior to the administration of the tests and following the administration of Miranda[2] warnings, Cahill asked defendant if he had been drinking. Cahill testified that defendant said he drank four or five "Harp beer[s]."

On cross-examination, Cahill acknowledged he did not see defendant operate the vehicle, but he explained defendant stood beside the vehicle with the

---

[1] During trial, the court determined the results of the Alcotest breath tests were inadmissible because the State did not offer into evidence two foundational documents—the most recent New Standard Solution Report and the Certificate of Analysis of the Simulator Solution used in defendant's control tests—required for admission of the test results. See State v. Chun, 194 N.J. 54, 154 (2008). The municipal court and Law Division judges did not consider the test results in their determinations of defendant's guilt on the DUI charge.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

engine running and no one else around. While at the police station, Cahill asked defendant about his medical history, and defendant said he had high blood pressure and diabetes. Cahill testified he did not believe his observations of defendant were consistent with someone suffering from a diabetic episode because defendant was "highly intoxicated."

Defendant presented one witness, Herbert Leckie, who the court qualified as an expert in the administration of field sobriety tests, DUI investigations, and "the interrelationship of medical conditions including diabetes and high blood pressure and the impact that it may have on intoxication or the appearance of intoxicat[ion]." Leckie described the standard field sobriety tests—the one-legged stand, horizontal gaze nystagmus, and walk-and-turn tests—and explained that alternative tests—"the alphabet test, the counting-backwards test, a finger dexterity test," and the "normal abilities test"—may be performed when the standard tests are not possible. Leckie testified there was no reason defendant could not have been asked to perform the alternative tests prior to his arrest or at the police station.

Leckie also testified that "if the person [is] a diabetic and experiencing a diabetic emergency[,] . . . that can oftentimes mimic the signs and symptoms of impairment." He also explained that "[t]he person will appear lethargic, not be

6

able to put together sentences, [have] slurred speech, their physical coordination would be impaired based upon that condition," and the person may emit a mouth odor that can mimic alcohol. On cross-examination, however, Leckie acknowledged he was unaware of any evidence defendant suffered a diabetic emergency on the evening of his arrest.

The municipal court judge rendered an opinion from the bench finding the defendant "was in physical possession of the vehicle" and had "intent to operate the vehicle" because he was standing next to it with the engine running and no one else around. The court also found Cahill's observations of defendant established defendant was under the influence of intoxicating liquor and therefore violated the DUI statute, N.J.S.A. 39:4-50(a).

The municipal court judge further found Cahill's testimony that "the damage to . . . defendant's vehicle and the paint transfer onto . . . defendant's vehicle matched the damage and the color of the vehicle . . . that was struck while parked" established beyond a reasonable doubt defendant had been involved in an accident with the parked vehicle. Based on that finding, the court concluded defendant left the scene of the accident in violation of N.J.S.A. 39:4-129(b), and failed to report an accident in violation of N.J.S.A. 39:4-130.

A-3017-19

The municipal court judge sentenced defendant to a two-year license suspension on the DUI conviction and a concurrent six-month suspension on the leaving the scene of an accident conviction. The court ordered that defendant attend forty-eight hours at the Intoxicated Driver's Resource Center on the DUI charge. The court also imposed fines, penalties, and court costs on each of the three offenses. The court stayed the concurrent license suspensions pending appeal subject to the condition that defendant install an ignition interlock device on his vehicle. Defendant timely appealed to the Law Division.

At the trial de novo in the Law Division, defendant argued Cahill's observations alone were insufficient to support a finding he was under the influence of an intoxicating liquor. He further claimed that contrary to the municipal court's finding, there was no evidence of a paint transfer between his vehicle and the parked vehicle that the State alleged had been involved in an accident. Defendant argued there was no competent evidence there had been an accident. Defendant also claimed that because there was no evidence there was an accident or that he was involved in an accident, he could not properly be convicted of either leaving the scene of an accident or failing to report an accident. Defendant further asserted the State failed to present evidence that the value of the property damage in the alleged accident was at least $500, and, as

8

a result, the State failed to prove an essential element of a failure to report an accident offense under N.J.S.A. 39:4-130.

The Law Division judge rejected defendant's claim he could not be convicted of DUI because Cahill did not perform field sobriety tests. The court accepted Cahill's testimony and concluded Cahill's observations established defendant was under the influence of an intoxicating liquor. The court also found defendant operated his vehicle within the meaning of N.J.S.A. 39:4-50(a) by standing next to the vehicle with its engine running while holding onto the driver's door with no one else in the area.

The court rejected defendant's reliance on Leckie's testimony that individuals experiencing a diabetic episode will exhibit the same physical manifestations as someone who is intoxicated. The court noted Leckie's admission that there was no evidence defendant experienced a diabetic episode on the evening of his arrest. The court found defendant guilty of DUI.

The court also determined defendant was involved in an accident because Lepre reported that a small gray SUV fled the scene of the parked vehicle, and Cahill testified the damage to the parked vehicle—a pushed in "left-rear quarter panel" and rear bumper—"more or less" matched the damage to the "right front"

9

of defendant's small gray SUV.[3] The court determined Cahill's testimony established defendant was involved in an accident with the parked car, left the scene of the accident, and failed to report the accident to Cahill. The court found defendant guilty of violating N.J.S.A. 39:4-129(b) and N.J.S.A. 39:4-130.

The court imposed the same sentences as the municipal court on defendant's conviction of the three offenses, and the court stayed the suspension of defendant's license pending appeal. Defendant appeals from the Law Division's final order. He offers the following arguments for our consideration:

> POINT I
>
> THE COURT ERRED BY FINDING [DEFENDANT] GUILTY OF DRIVING WHILE INTOXICATED.
>
> POINT II
>
> THE COURT IMPERMISSIBLY SHIFTED THE BURDEN TO [DEFENDANT].
>
> POINT III
>
> THE COURT ERRED BY FINDING [DEFENDANT] GUILTY OF LEAVING THE SCENE OF AN ACCIDENT.

---

[3] The Law Division judge correctly noted there is no support in the record for the municipal court's finding there was evidence of a "paint transfer" between defendant's vehicle and the parked vehicle that supported the municipal court's conclusion defendant had been involved in an accident with the parked vehicle.

A-3017-19

POINT IV

THE COURT ERRED BY FINDING [DEFENDANT]
GUILTY OF FAILING TO REPORT AN ACCIDENT.

II.

In our review of the Law Division's decision on a municipal appeal, "we 'consider only the action of the Law Division and not that of the municipal court.'" State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011) (citation omitted). "Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:23-8(a), we do not independently assess the evidence." State v. Gibson, 429 N.J. Super. 456, 463 (App. Div. 2013) (citing State v. Locurto, 157 N.J. 463, 471 (1999)), rev'd on other grounds, 219 N.J. 227 (2014). We consider only "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 48-49 (2012) (quoting Locurto, 157 N.J. at 471); see also State v. Robertson, 228 N.J. 138, 148 (2017). We review de novo the court's legal conclusions and the legal consequences that flow from established facts. State v. Goodwin, 224 N.J. 102, 110 (2016).

A.

Defendant argues the evidence does not support his DUI conviction because Cahill's "uncorroborated observations of impairment are simply

11

insufficient to prove guilt beyond a reasonable doubt."  In his reply brief, defendant "concede[s] that there is no per se rule or legal requirement that an officer's observations must be corroborated by [f]ield [s]obriety [t]ests or an Alcotest reading," but he contends that to establish proof beyond a reasonable doubt, "corroboration of some kind is necessary for the [S]tate to meet [its] heavy burden" of proof.  We disagree.

In pertinent part, N.J.S.A. 39:4-50(a) prohibits an individual from "operat[ing] a motor vehicle while under the influence of intoxicating liquor." To establish a violation of the statute, the State must prove the defendant operated a motor vehicle while under the influence of intoxicating liquor, State v. Thompson, 462 N.J. Super. 370, 374 (App. Div. 2020), beyond a reasonable doubt, Robertson, 228 N.J. at 148.

Defendant does not challenge the court's determination the State proved beyond a reasonable doubt that he operated the vehicle.  See generally Thompson, 462 N.J. Super. at 374-75 (explaining proofs required to establish operation of a vehicle under N.J.S.A. 39:4-50(a)).  Operation of a vehicle under N.J.S.A. 39:4-50(a) does not require proof of "driving" and "may be found from evidence that would reveal 'a defendant's intent to operate a motor vehicle.'" Ibid. (quoting State v. Tischio, 107 N.J. 504, 513 (1987)).  Our independent

12

review of the record confirms there is substantial credible evidence establishing defendant operated the vehicle.

Defendant argues the evidence did not adequately establish he was under the influence of an intoxicating liquor at the time of his operation of the vehicle. "A driver is 'under the influence' of alcohol, N.J.S.A. 39:4-50, when his or her 'physical coordination or mental faculties are deleteriously affected.'" State v. Nunnally, 420 N.J. Super. 58, 67 (App. Div. 2011) (quoting State v. Emery, 27 N.J. 348, 355 (1958)). "'Intoxication' not only includes obvious manifestations of drunkenness but any degree of impairment that affects a person's ability to operate a motor vehicle." State v. Zeikel, 423 N.J. Super. 34, 48 (App. Div. 2011).

Cahill's testimony provided sufficient credible evidence establishing defendant was under the influence of an intoxicating liquor, and that his physical coordination and mental faculties were affected. Defendant admitted drinking alcoholic beverages, four or five beers, and Cahill's testimony established that prior to pulling into the parking lot, defendant drove his vehicle late at night without its lights on. Cahill also observed defendant had bloodshot and watery eyes, had the smell of alcohol on his breath, slurred his words, swayed as he stood, had difficulty finding his license in his wallet, and could not stand without

13

holding onto his vehicle's door. Those observations amply support Cahill's testimony that defendant was "highly intoxicated," and the court's finding defendant was under the influence. See State v. Bealor, 187 N.J. 574, 588 (2006) (noting a court will sustain a driving while under the influence of alcohol conviction "on proofs of the fact of intoxication—a defendant's demeanor and physical appearance—coupled with proofs as to the cause of intoxication—i.e., the smell of alcohol, an admission of the consumption of alcohol, or a lay opinion of alcohol intoxication"); State v. Bryant, 328 N.J. Super. 379, 383 (App. Div. 2000) (noting that the "prosecutor could have proceeded on the driving under the influence charge by utilizing evidence other than the breathalyzer results," including an odor of alcohol, "slow and uncoordinated" hand movements, "difficulty walking," and a refusal to take a sobriety test).

We find no support in the law for defendant's claim Cahill's competent and admissible testimony could not satisfy the State's burden of proving defendant was under the influence. As we explained in State v. Corrado, "[e]ven in the absence of breathalyzer results, the testimony of the police officers regarding their observations and opinions based thereon was sufficient to establish th[e] defendant was intoxicated." 184 N.J. Super. 561, 567 (App. Div. 1982); see also State v. Guerrido, 60 N.J. Super. 505, 510 (App. Div. 1960)

14

(finding testimony that the "defendant smelled of alcohol, staggered, was abusive, and was definitely under the influence of intoxicating liquor" supported a conviction for DUI); State v. Liberatore, 293 N.J. Super. 580, 589 (Law Div.) ("Independent of breathalyzer results, an alternative finding of intoxication may be based upon observational evidence to find a defendant guilty beyond a reasonable doubt of DUI."), aff'd o.b., 293 N.J. Super. 535 (App. Div. 1996). We therefore discern no basis to conclude the court erred by finding the State presented sufficient evidence establishing beyond a reasonable doubt that defendant was under the influence. Cahill's observations of the highly intoxicated defendant are enough.

Defendant also claims the court improperly shifted the burden to him by implying he had an obligation to present evidence concerning his diabetes. Defendant relies on the court's finding "there was no evidence presented . . . that showed . . . defendant was having a diabetic episode at the time of his arrest." He contends the court's finding impermissibly placed a burden on him to "present an alternative theory and specifically evidence of diabetes."

The record does not support defendant's claim. He introduced the issue of the effects of a diabetic episode into the case. Defendant presented Leckie, who testified the effects of a diabetic episode mimic the effects of intoxication.

15

In its opinion, the court merely addressed defendant's argument, supported by Leckie's testimony, that defendant's physical characteristics and actions might have been caused by a diabetic episode and not intoxication. The court did not shift the burden to defendant. The court did nothing more than restate Leckie's testimony there was no evidence defendant suffered from a diabetic episode, and the court properly determined that without such evidence, it could not conclude defendant's appearance and actions were the result of a diabetic episode. The court solely relied on the State's evidence defendant was highly intoxicated to support its finding defendant operated his vehicle while under the influence of an intoxicating liquor in violation of N.J.S.A. 39:4-50(a). We therefore affirm defendant's conviction for DUI.

B.

Defendant argues there was insufficient credible evidence establishing he was involved in an accident and, as a result, his convictions for leaving the scene of an accident and failure to report an accident must be reversed. He also claims he could not be properly convicted of failing to report an accident because the State did not present evidence establishing the alleged accident resulted in property damage in excess of $500.

16

N.J.S.A. 39:4-130 defines the offense of failing to report an accident. In pertinent part, the statute provides that "[t]he driver of a vehicle . . . involved in an accident resulting in injury to . . . any person . . . or damage to property of any one person in excess of $500[] shall by the quickest means of communication give notice of such accident" to the police. N.J.S.A. 39:4-130. By the statute's plain language, a driver commits an offense when he or she fails to report involvement in an accident resulting in either injury to any person or property damage of any one person exceeding $500.

The trial record is bereft of evidence that any person suffered personal injury in the purported accident or that there was any property damage exceeding $500. Indeed, the court's findings of fact and conclusions of law do not address this essential element of an offense under N.J.S.A. 39:4-130. The State failed to sustain its burden of proving property damage element of the offense, and, for that reason alone, we reverse defendant's conviction for failing to report an accident. See State v. Cooper, 129 N.J. Super. 229, 231 (App. Div. 1974) (explaining that "the State has the burden of proving all the essential elements of a motor vehicle violation").

We reverse defendant's conviction for failure to report an accident for a separate but equally dispositive reason that also requires the reversal of

17

defendant's conviction for leaving the scene of an accident in violation of N.J.S.A. 39:4-129(b).  The failure to report and leaving the scene offenses for which defendant was convicted share a common element: the State must prove the defendant was involved in an accident in the first instance.  See N.J.S.A. 39:4-129(b) (requiring that a "driver of any vehicle knowingly involved in an accident resulting only in damage to a vehicle . . . immediately stop" and stay at the scene or as close as possible to the scene); N.J.S.A. 39:4-130 (requiring the driver of a vehicle involved in an accident involving personal injury or property damage exceeding $500 to provide notice of the accident to the police).  The trial evidence failed to satisfy the State's burden of proving this element of the offenses for which defendant was convicted.

There was no direct evidence presented at trial describing the occurrence of the accident during which defendant allegedly drove his vehicle into a parked car.  No witnesses to the accident testified.  The owner of the parked vehicle did not testify.  There was no evidence concerning the condition of the parked vehicle before the alleged accident.  Instead, Lepre testified he was dispatched to investigate a "complaint of a vehicle that struck a parked vehicle several times," and he spoke to a woman when he arrived.  The municipal court properly sustained defendant's objection to Lepre testifying about what the woman said.

18

See N.J.R.E. 802 (prohibiting admission of hearsay evidence unless as otherwise provided by the Rules of Evidence). Thus, Lepre testified only that after speaking to the woman, he provided a description of a vehicle, a small gray SUV, to the dispatcher. Neither Lepre nor any other witness testified the car he described was involved in an alleged accident with the parked car.

The court's finding defendant was the driver of the vehicle involved in the alleged accident with the parked car is founded solely on Cahill's testimony the damage to the parked car "more or less" matched the damage to defendant's vehicle. We find that scant opinion testimony insufficient to establish beyond a reasonable doubt that defendant's vehicle was involved in a purported accident with the parked car. The State offered no competent evidence linking defendant's vehicle to the purported accident with the parked car, and, in our view, the mere fact that defendant's vehicle had damage that "more or less" matched the damage to the parked car does not establish beyond a reasonable doubt that the two cars had been involved in accident or that defendant's vehicle caused the damage to the parked car. Lacking evidence establishing defendant's vehicle was involved in the purported accident and defendant was driving the vehicle at the time, the court's findings defendant is guilty of leaving the scene,

N.J.S.A. 39:4-129(b), and failing to report an accident, N.J.S.A. 39:4-130, cannot be sustained. We reverse defendant's convictions for those offenses.

Affirmed in part, reversed in part. The stay of defendant's license suspension for his DUI conviction is hereby vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3017-19