791 A.2d 1138 (2001)
348 N.J. Super. 359
STATE of New Jersey, Plaintiff-Respondent,
v.
James A. GELLER, Defendant-Appellant.
Superior Court of New Jersey, Law Division, Essex County.
Decided July 6, 2001.
Howard B. Felcher, New York City and James A. Geller, Pro Se, for appellant.
Eileen M. Egan, Acting Assistant Prosecutor, (Donald C. Campolo, Assistant Attorney General/Acting Essex County Prosecutor,) for State of New Jersey.
KLEIN, J.S.C.
At approximately 2:00 a.m. on July 7, 2000, Officer David Filipello of the West Caldwell Police Department observed a black Mercedes automobile traveling north on Passaic Avenue at an excessive rate of speed. He activated his overhead lights and pursued the vehicle into the parking lot of a Sunoco gas station. The driver, defendant James A. Geller, exited the vehicle, in which a female passenger was seated. Mr. Geller appeared to be in a somewhat disheveled condition, with his shirt on inside out and his pants unfastened. Mr. Geller refused to honor two commands of the officer to return to his car, and said that he was going to buy some cigars at *1139 the station's convenience store. Both men raised their voices; Mr. Geller angrily threatened a civil suit and claimed that he, a practicing attorney, knew the local judge. The officer called for backup to help keep control because he felt that Mr. Geller was uncooperative and was causing a disturbance. Over his protests of "unfairness", Mr. Geller was made to perform the standard field tests for sobriety, and was unable to complete certain tests, namely, the one-legged stand test and the one-finger-handed count. When he refused the officer's request to repeat the balance test, he was placed under arrest.
At headquarters, the defendant was described as very agitated and belligerent in going over the DWI form with Lt. James Veneziano. He refused to give certain information for the arrest form, and in the interval prior to administration of the breathalyzer test, he protested the refusal of his demands to use the bathroom by gesturing as if he were urinating into his shoe. However, when asked by the police officer if he would take the test, he responded "I will take the test." As an attorney who had represented clients charged with DWI, Mr. Geller admittedly knew that he could not refuse to take the test.
Before the defendant's first encounter with the breathalyzer, Lt. Veneziano instructed him to "lean over and blow into the mouthpiece-as hard as he could until
I told him to stop." Defendant did not blow sufficient air into the machine, and as a result the Lieutenant told him to "make a tight seal on the mouthpiece with his lips." Defendant again failed to provide a sample. The instructions were repeated a third time with similar results. Because it appeared to the Lieutenant that Mr. Geller was holding the tube with his teeth so as to blow air around, rather than into, the mouthpiece, he cautioned the defendant that he would be given one more chance and then would be cited for refusal. After the fourth unsuccessful attempt, defendant faulted the machine, commenting that he had won numerous cases because the breathalyzer was not calibrated. When Lt. Veneziano told him he was being charged with refusal, Mr. Geller retorted: "You think I'm f with the test?", to which the Lieutenant replied "Absolutely". Mr. Geller reportedly then said "All right, I'll stop f with the test, but if I blow under a one-oh I want an apology from that officer [Filipello]".
Mr. Geller was allowed a total of six opportunities to provide breath samples. The last try resulted in what was referred to as a green full light; however, the Lieutenant determined that it was not a sufficient sample to analyze. Defendant was charged with violation of the implied consent statute, N.J.S.A. 39:4-50.2, as well as driving while intoxicated, N.J.S.A. 39:4-50; speeding, N.J.S.A. 39:4-97; and obstruction of police, N.J.S.A. 2C:29-1 (a).
A conflict of interest caused the case to be transferred from the West Caldwell Municipal Court to the Roseland Municipal Court for trial. The sole charge of which defendant was convicted was that of refusal to take a breathalyzer test. In his decision, the municipal judge observed that the defendant was "out of control" and "confrontational" and that "his anger and agitation was clouding his overall judgment and conduct...in taking these tests." The judge made detailed findings that included the following:
He also knew what he was doing, in this Court's opinion, when he washad his mouth on this machine. He also had, I believe, that he intentionally was giving improper samples. I think he was doing it to, frankly, aggravate the Lieutenant. He was still upset with police officer Filipello, and he was definitely playing games.
*1140 The judge also found that "...there's no doubt that Mr. Geller, being an attorney, practicing in this area, knew all about the implied consent form, knew all about his rights, knew all about the fact that he needed to take this test, and that he knew his rights with respect to that."
An appeal followed to this court, whose function "is to determine the case completely anew on the record made in the municipal court, giving due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). Additionally, the Superior Court must issue its own findings of fact from the record below. Id.
In this case, there was sufficient credible evidence that defendant's conduct constituted a refusal to give samples of his breath under the implied consent law. There are numerous instances in the record of defendant's defiant and overtly hostile attitude from the moment that he exited his car and confronted Officer Filipello. When viewed in the context of the entire episode, a reasonable fact finder could determine that defendant's failure to give a sufficient breath sample despite six attempts was part of his pattern of belligerence rather than a result of inadvertence, misunderstanding, accident or physical inability.
There was also support in the record below for the judge's findings that defendant had sufficient awareness of his circumstances and understood that he had an obligation to take the breathalyzer test. Not only did Mr. Geller admit as much at the hearing, but there was evidence that he repeatedly reminded the police officers that he was an attorney, that he had experience in DWI matters and that he was familiar with the operation of the specific model of breathalyzer machine in question. It is a reasonable conclusion from these facts that defendant knew what he was doing at the time the test was administered to him. The municipal judge did not find, and this court does not hold, that the defendant is subject to an enhanced standard merely because he is an attorney. However, because defendant portrayed himself as having more than average knowledge of the law requiring him to submit to a breathalyzer test, it was reasonable to infer that what he did was to consciously engage in a more subtle form of "refusal."
Defendant contends that he cannot be found guilty under N.J.S.A. 39:4-50.2 because he unequivocally consented to take the test. There are no reported cases in New Jersey with the same or similar facts as the case at bar, where a defendant's clear expression of assent is belied by his subsequent actions. New Jersey courts have had occasion to consider whether an initial refusal to take the test, albeit to consult with an attorney, can be "cured" by a subsequent agreement to submit to it. It has been uniformly held that a belated agreement cannot "undo" a violation. See, e.g. State v. Bernhardt, 245 N.J.Super. 210, 584 A.2d 854 (App.Div. 1991) (holding that ten or more requests to take the test, followed by four or five minute interval to call attorney, after which defendant agreed to test, constituted a refusal); State v. Corrado, 184 N.J.Super. 561, 446 A.2d 1229 (App.Div. 1982) (holding that initial refusal was final and not cured by agreement after passage of almost one hour and consult with attorney).
These decisions stand for the proposition that a "cure" undercuts the strong public policy in this State of requiring the courts to work in tandem with the Legislature "to streamline the implementation" of laws designed to rid the highways of drunken drivers. State v. Tischio, 107 *1141 N.J. 504, 514, 527 A.2d 388 (1987); appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988). The implied consent laws facilitate enforcement of the DWI statutes by encouraging motorists suspected of driving under the influence to submit to breathalyzer tests. State v. Wright, 107 N.J. 488, 499, 527 A.2d 379 (1987). To effectuate these policies and ensure that tests are conducted before physical evidence of alcohol consumption has a chance to dissipate, it has been held that "anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so". State v. Bernhardt, 245 N.J.Super. at 219, 584 A.2d 854; State v. Corrado, 184 N.J.Super. at 569, 446 A.2d 1229, quoting from State v. Pandoli 109 N.J.Super. 1, 4, 262 A.2d 41 (App.Div.1970) as follows: "The occasion is not one for debate, maneuver or negotiation, but rather for a simple `yes' or `no' to the officer's request."
Thus, a defendant's silence when requested to take a breathalyzer test is legally equivalent to a refusal. State v. Sherwin, 236 N.J.Super. 510, 515, 566 A.2d 536 (App.Div.1989). Moreover, a defendant has been deemed to refuse a breathalyzer test by stating "I agree to the samples of my breath, but I would like my attorney present for calibration purposes." See State v. Widmaier, 157 N.J. 475, 497, 724 A.2d 241 (1999) (such a response is "conditional, not rising to the level of the unequivocal consent needed to proceed with a breathalyzer test").
This court finds that under the circumstances of this case, defendant's conduct was equivalent to a refusal. This holding is a logical and reasonable extension of existing precedent. At the very least, defendant engaged in impermissible delay tactics. State v. Pandoli, supra, 109 N.J.Super. at 4, 262 A.2d 41. Mr. Geller was given instructions several times that he should make a tight seal on the mouthpiece with his lips, and blow as hard as he could until told to stop. The Lieutenant was not required by law to do more. A police officer has no duty to bring a defendant to the machine, instruct him to blow into it, and hold the hose to his mouth in order to determine a refusal. State v. Widmaier, 157 N.J. at 498, 724 A.2d 241; State v. Sherwin, 236 N.J.Super. at 516-17, 566 A.2d 536. Lt. Veneziano gave defendant a total of six opportunities to give a full and proper sample and he did not do so. To the extent that the sixth attempt, resulting in a green full light, can be viewed as an effort to "cure", New Jersey law does not countenance it. See State v. Bernhardt, 245 N.J.Super. at 217, 584 A.2d 854.
It was recognized in State v. Widmaier, 157 N.J. at 498, 724 A.2d 241, that a defendant's verbal response does not always coincide with his subjective intent on the issue of submission to the breathalyzer test. While a police officer has no obligation to look behind a conditional or ambiguous response to probe for a defendant's true intent, see id., an affirmative verbal response should not automatically preclude an officer from charging a defendant with refusal where the circumstances warrant. Such circumstances would include any words or actions which indicate that the agreement to the test was no more than a sham and a charade. This case exemplifies the old saying, "Actions speak louder than words." It would frustrate the strong public policy of New Jersey if defendants could insulate themselves from prosecutions for refusal by saying "yes" to the test, and then be able to manipulate the results or thwart its proper operation. Defendant's conduct here smacks of the type of maneuver condemned in State v. Pandoli, supra, and falls short of the "unqualified, unequivocal *1142 assent" required under the implied consent law. 109 N.J.Super. at 4, 262 A.2d 41.
Defendant's other arguments are likewise of no merit. The officer who administered the test gave a sufficient explanation of his certification and proof thereof to the satisfaction of the Municipal Judge. Moreover, giving due regard to the opportunity to judge the credibility of the witnesses, the charges were not the result of any personal bias against the defendant, but more likely were provoked by the hostile attitude he demonstrated toward the police officers. This finding is not altered by the fact that the Lieutenant persisted in charging defendant after he had blown a green full light. Defendant's own expert testified in the Municipal Court that it was a subjective determination within the discretion of the person administering the test as to the adequacy of the sample.
Accordingly, defendant is convicted of violating N.J.S.A. 39:4-50.2 and the sentence as ordered by the municipal court is hereby imposed.