997 A.2d 1092 (2010)
414 N.J. Super. 194
STATE of New Jersey, Plaintiff-Respondent,
v.
Aaron P. SCHMIDT, Defendant-Appellant.
DOCKET NO. A-2237-08T4.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 2010.
Decided July 1, 2010.
*1093 Law Offices of Hoffman DiMuzio, Woodbury, for appellant (Peter J. Bonfiglio, III, of counsel and on the brief).
Sean F. Dalton, Gloucester County Prosecutor, attorney for respondent (Joseph H. Enos, Jr., Assistant Prosecutor, on the brief).
Before Judges CUFF, PAYNE and WAUGH.
The opinion of the court was delivered by
PAYNE, J.A.D.
N.J.S.A. 39:4-50.2(a) provides that "[a]ny person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood." Paragraph (e) of that statutory provision bars forcible sampling, but it further provides:
The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with [N.J.S.A. 39:4-50.4a]. A standard statement, prepared by the director, shall be read by the police officer to the person under arrest.
In accordance with the statutory directive, the Chief Administrator of the Motor Vehicle Commission has promulgated a Standard Statement, consisting of two parts. The first part presently is comprised of eleven paragraphs that inform the arrestee, among other things, of the basis for arrest, the requirement that the arrestee submit to breath sampling, that the right to remain silent and the right to consult with an attorney are not available in the circumstances, and the consequences of the arrestee's refusal to submit to a breath test. The text concludes with the following paragraph:
I repeat, you are required by law to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Now, will you submit the samples of your breath?
A space on the form is provided for the arrestee's response.
The second part of the form commences with "Additional Instructions for Police Officer":
If the person: remains silent; or states or otherwise indicates that he/she refuses to answer on the grounds that he/she has a right to remain silent, or wishes to consult an attorney, physician, or any other person, or if the response is ambiguous or conditional, in any respect whatsoever, then the police officer shall read the following additional statement:
The form then continues:
I have previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney, do not apply to the taking of breath samples and do not give you the right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. Your prior response, silence, or lack of response, is unacceptable. If you do not agree, unconditionally, to provide breath samples now, then you will be issued a separate summons charging you *1094 with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
Once again, I ask you, will you submit to giving samples of your breath?
 ANSWER _____________
At the present time, blood alcohol content is measured by a breath test that utilizes an Alcotest machine, programmed to require that a test subject produce a breath sample that meets four criteria, including production of a minimum volume of 1.5 liters[1] and a minimum blowing time of 4.5 seconds. State v. Chun, 194 N.J. 54, 97-104, 943 A.2d 114, cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008). The machine permits a maximum of eleven attempts to obtain two valid test samples. Id. at 81, 943 A.2d 114.
This appeal by defendant, Aaron Schmidt, from his conviction for refusal to take an Alcotest, N.J.S.A. 39:4-50.2, raises two issues for our consideration: (1) are the police required to comply with N.J.S.A. 39:4-50.2(e) by reading the standard language concerning the consequences of a refusal (part two of the Standard Statement) when a defendant unequivocally agrees to submit to an Alcotest but then fails to produce a valid sample; and (2) how many attempts must a police officer provide before charging the defendant with refusal? Defendant raises these issues under the following argument headings:
I. THE STATE FAILED TO COMPLY WITH THE REQUIREMENTS OF N.J.S.A. 39:4-50.2(e).
II. THE STATE FAILED TO ESTABLISH THE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT.
We reverse defendant's refusal conviction.

I.
The matter was tried on stipulated facts, together with the admission into evidence of the police investigation report of Sergeant Joe Morgan and defendant's Alcotest results. The evidence disclosed that, on November 29, 2007 at 2:36 a.m., Sgt. Morgan observed defendant driving at a speed approximately ten miles below the speed limit. Soon thereafter, Morgan also observed defendant's car crossing over the shoulder line of the road, swerving back into the lane of traffic, and then crossing the road's double center line. When Morgan stopped defendant, he detected the odor of alcohol, administered field sobriety tests, and arrested defendant.
After being transported to the Woolwich Township Police Headquarters, defendant was processed, advised of his Miranda[2] rights, and read the eleven paragraphs of the New Jersey Motor Vehicle Commission Standard Statement for Operators of a Motor Vehicle, mandated by N.J.S.A. 39:4-50.2(e). In response to the question, "will you submit the samples of your breath," defendant said "yes." Defendant was then instructed to take a deep breath and blow into the mouthpiece of the Alcotest machine with one long continuous breath until he was advised to stop. Defendant stated that he understood. However, the Alcotest results indicate that defendant produced no measurable volume of breath, and his sample was only of a 0.3-second duration. Defendant was then reinstructed, and a second test was administered. Although the duration of defendant's breath was sufficient, measuring 4.9 *1095 seconds, he again produced an insufficient volume of air of only 1.2 liters. A blood alcohol reading therefore could not be obtained. Defendant was then instructed for a third time and advised that if he did not give a long continuous breath that "he would be considered a refusal." This time, the volume of breath produced by defendant was again 1.2 liters and its duration was 3.3 seconds. Therefore the Alcotest machine did not calculate a blood alcohol reading, and instead gave for the third time an error message stating "min. vol. not achieved." Defendant was then charged with refusal to submit to Alcotest testing.
At trial, the State declined to prosecute defendant for driving while intoxicated, N.J.S.A. 39:4-50, because a physical disability rendered the State's proofs on that charge to be insufficient. However, it proceeded with the refusal charge, introducing a stipulation that defendant was operating a vehicle prior to his arrest, that he had consumed some alcohol before being stopped, and that the police had probable cause to require defendant to submit to an Alcotest. Counsel for the defendant defended against the charges by arguing that, once the officer determined that he was going to charge defendant with refusal, he was required to read defendant the second part of the Standard Statement, informing defendant of the consequences of his refusal, which the officer failed to do, and as a consequence, the charge could not be sustained. Additionally, defense counsel noted that defendant had attempted to comply with the Alcotest's procedures. The municipal judge rejected defendant's arguments and found him guilty of refusal.
On appeal to the Law Division, defense counsel argued that because defendant attempted to blow on at least two occasions while the Alcotest was being administered, he should have been given additional opportunities to meet the Alcotest's minimum volume and durational requirements. Additionally, counsel argued that defendant's insufficient efforts, occurring after he had agreed to submit to the Alcotest, rendered his assent ambiguous and triggered the requirement that the police read to him the second part of the Standard Statement.
Following argument, the judge ruled from the bench that defendant's response to whether he would submit to the Alcotest was unequivocal, and that a reading of the second part of the Standard Statement, required when a defendant's response was ambiguous or conditional, was not necessary. In a later written opinion, the judge reiterated his conclusion that defendant's consent to undergo the Alcotest was unequivocal and therefore the police were not required to read the second part of the Standard Statement detailing the consequences of a refusal. Additionally, the judge found beyond a reasonable doubt that defendant had knowingly refused to provide a proper sample; that after his second attempt, he was warned that further noncompliance would result in a charge of refusal; that defendant again failed to comply with testing procedures; and that the State was not obligated to continue with the test up to the maximum of eleven tries permitted by the machine before a refusal could be found to have occurred. The judge therefore found defendant to be guilty of the refusal charge. This appeal followed.

II.
Defendant's appeal raises issues that have not been resolved definitively in prior decisions. We turn first to a consideration of whether the police officer administering the Alcotest to defendant was required to read the second part of the Standard Statement to defendant following his failure to produce an adequate breath sample. *1096 We commence our analysis of that issue by considering State v. Widmaier, 157 N.J. 475, 724 A.2d 241 (1999). In that case, the defendant, arrested for drunk driving and required by the police to take a breathalyzer test, was read the first part of the then-existing Standard Statement, to which he responded: "Sir, I would like you to call Francis Xavier Moore, my attorney." Id. at 484, 724 A.2d 241. As a consequence, the officer then read the second part of the Standard Statement, which then stated:
I have previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney do not apply to the taking of breath samples and do not give you a right to refuse to give, or delay giving, samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. If you (1) do not respond to my question about submitting breath samples; or (2) tell me that you refuse to answer this question because you have a right to remain silent or first wish to consult with an attorney, physician or any other person; or (3) tell me that you will not submit breath samples because you have a right to remain silent or first wish to consult with an attorney, physician, or any other person, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.
[Id. at 484-85, 724 A.2d 241.]
After hearing that statement, the defendant stated: "I agree to the samples of my breath, but I would like my attorney present for calibration purposes." Id. at 485, 724 A.2d 241. After being informed again that he did not have the right to consult with an attorney, defendant remained silent. Ibid. He was subsequently charged with refusal to submit to a breathalyzer test. Ibid.
The municipal court judge, however, did not regard the defendant's statement to be a refusal, and he acquitted the defendant of that charge. Id. at 485, 724 A.2d 241. On eventual appeal of the acquittal to the Supreme Court, that Court held further prosecution was barred by principles of double jeopardy. Id. at 489-96, 724 A.2d 241. However, it held as well that the defendant's conditional response to the officer's question as to whether defendant would submit to a breathalyzer test did not constitute his unequivocal consent to the procedure, and that his "conditional and ambiguous response appropriately was understood by the officer to be a refusal." Id. at 497-98, 724 A.2d 241.
What we find to be of particular significance in Widmaier is the Court's subsequent recommendation that part two of the Standard Statement be modified to encompass circumstances in which a conditional or ambiguous statement has been provided by the defendant. The Court stated:
We would recommend a modification of the instructions accompanying the statement that directs the police officer, in the event the motorist's response to the standard statement is conditional in any respect whatsoever, to then inform the motorist that the prior response is unacceptable and that, unless the motorist consents unconditionally to the taking of breath samples, a summons alleging violation of the breathalyzer statute will issue. Accordingly, we urge the Director of the Division of Motor Vehicles to consider revising the standard statement to further ensure that suspects understand that an ambiguous or conditional answer to a request to submit to a breathalyzer test will be deemed a refusal.
[Id. at 498, 724 A.2d 241 (emphasis supplied).]
*1097 We followed Widmaier in State v. Duffy, 348 N.J.Super. 609, 792 A.2d 555 (App.Div. 2002). In that case, the defendant was read part one of the Standard Statement, and he initially indicated that he would take a breathalyzer test. Id. at 610, 792 A.2d 555. However, he then informed the police officer that he was sick and could not take the test. Subsequent to that, defendant again changed his mind, informing the officer that he thought he could take it. However, as he was taken from the holding cell, the officer observed the defendant sticking his fingers down his throat as if he were trying to vomit. Ibid. When placed before the breathalyzer and again asked if he would take the test, the defendant responded: "I'll take the test, but it's under duress." The defendant was then taken back to the cell and charged with refusal. Id. at 610-11, 792 A.2d 555.
On appeal from his conviction on the refusal charge, we observed that we had "considerable reservation" about whether defendant's comment placed a condition upon his consent. Id. at 612, 792 A.2d 555. Nonetheless, we held that, once the officer interpreted the response as a refusal, he was obligated to read the second part of the Standard Statement, and his failure to do so invalidated the conviction. Id. at 612-13, 792 A.2d 555.
In the present matter, defendant unambiguously consented to undergo an Alcotest after being read the first part of the Standard Statement. Nonetheless, he failed on three consecutive occasions to give an adequate breath sample. The officer administering the test regarded defendant's conduct as a refusal, and he was justified in reaching that conclusion. See State v. Geller, 348 N.J.Super. 359, 362-65, 791 A.2d 1138 (Law Div.2001) (finding a refusal to have occurred when the defendant agreed to a breathalyzer test but then blew air around, rather than into, the mouthpiece). Although the second part of the Standard Statement need not be read if the defendant unequivocally refuses to take the test, State v. Spell, 196 N.J. 537, 539-40, 959 A.2d 1209 (2008), we do not view defendant's apparently inadequate efforts after his prior unequivocal consent to be an unequivocal declaration of intent, but rather, an ambiguous indication of purpose. Nonetheless, faced with a conditional or ambiguous response, the officer administering the Alcotest did not read to defendant the second part of the Standard Statement, but instead merely threatened defendant with prosecution for refusal.
We regard Widmaier's instruction that the second part of the Standard Statement be given if the defendant's response "is conditional in any respect whatsoever," coupled with our holding in Duffy requiring the instruction under even more ambiguous circumstances, to provide the necessary foundation for a similar conclusion that the instruction was required under the factually different but equally conditional or ambiguous circumstances of this case.
In this regard, we note that the present Standard Statement echoes Widmaier by instructing the officer to read part two of the Statement "if the response is ambiguous or conditional, in any respect whatsoever." As a consequence, we do not regard our ruling as in any manner usurping the power vested by the Legislature in the Chief Administrator of the Motor Vehicle Commission to determine the contents and procedure to be followed in respect of the Standard Statement. Compare Spell, supra, 196 N.J. at 539-40, 959 A.2d 1209 (vacating our requirement that the second part be read whenever the defendant refuses to immediately take the breathalyzer examination as exceeding our powers).
Turning to the second issue raised by defendant, we find that if the second part of the Standard Statement had been read to defendant after his second Alcotest, *1098 defendant's failure to provide an adequate breath sample on his third attempt would have provided a sufficient foundation for a refusal charge, assuming that the officer concluded that there was an unwillingness, as opposed to an inability, to give an adequate sample. In this regard, we note that there is no requirement in Chun that a defendant be afforded all eleven possible attempts to produce an adequate breath sample. Moreover, the Court in that case held that "[c]harging an arrestee with refusal remains largely within the officer's discretion." Chun, supra, 194 N.J. at 99, 943 A.2d 114 (citing Widmaier, supra, 157 N.J. 475, 724 A.2d 241). So long as the second part of the Standard Statement is read and the defendant, without reasonable excuse, continues to produce inadequate breath samples, we find it to be within a police officer's discretion to terminate the Alcotest and charge the defendant with refusal.
Reversed.
NOTES
[1] 1.2 liters in women over the age of sixty.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).