19 A.3d 457

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. AARON
P. SCHMIDT, DEFENDANT–RESPONDENT.

Argued March 28, 2011—Decided May 26, 2011.

*Boris Moczula,* Assistant Attorney General, argued the cause for appellant (*Paula T. Dow,* Attorney General of New Jersey, attorney).

*Peter J. Bonfiglio, III,* argued the cause for respondent (*Hoffman–DiMuzio,* attorneys).

*Jeffrey S. Mandel* submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (*PinilisHalpern,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

Arrested as a repeat offender for driving while intoxicated, defendant Aaron P. Schmidt was read the standard warnings that must be provided before the administration of a breath-based blood alcohol test. Defendant consented to the administration of the breath test. Although defendant was instructed that, in order to produce valid results, he needed to provide a long, continuous breath, he twice failed to do so. The police then advised defendant that his failure to provide the required volume and length of breath would be considered a refusal to take the test. For the third consecutive time, defendant failed to do as instructed and, as he was warned, he was charged with refusal to provide "samples of his breath for the purpose of making chemical tests to deter-

mine the content of alcohol in his blood[,]" in violation of *N.J.S.A.* 39:4–50.2(a).

Defendant was tried on a stipulated record consisting exclusively of the police report and the statement originally generated by the Motor Vehicle Commission that was read to defendant by the police. He argued that, despite his agreement to provide the required breath samples, his failure to provide the required length and volume of breath necessary for a valid reading was the functional equivalent of an initial refusal, which should have triggered the police's obligation to read to defendant an additional statement. Rejecting that argument, the municipal court found defendant guilty of refusal and imposed a sentence that it stayed pending defendant's appeal. At a trial de novo before the Law Division, defendant repeated his earlier argument; that effort too was unsuccessful. However, defendant's arguments found a more receptive audience before the Appellate Division, which concluded that "the instruction [contained in the additional statement] was required under the ... conditional or ambiguous circumstances of this case[,]" *State v. Schmidt,* 414 *N.J.Super.* 194, 203, 997 *A.*2d 1092 (App.Div.2010), and that the failure to meet that requirement mandated overturning defendant's conviction and sentence.

We disagree. Those who are required to provide a breath sample in order to determine whether they have operated a motor vehicle while under the influence of intoxicating liquor are statutorily entitled to "[a] standard statement, prepared by the chief administrator [of the Motor Vehicle Commission, which] shall be read by the police officer to the person under arrest." *N.J.S.A.* 39:4–50.2(e).[1] That statement, prepared by the Executive Branch,

---

[1] Effective August 24, 2009, and pursuant to Reorganization Plan No. 03–2009, the responsibility for the promulgation of standard statements regarding implied consent to chemical breath test statutes was transferred from the Chief Administrator of the Motor Vehicle Commission to the Attorney General. *See* 41 *N.J.R.* 2825(a) (Aug. 3, 2009). *See also N.J.S.A.* 39:4–50.2a (providing that Attorney General "shall promulgate guidelines concerning the prosecution of" driving while intoxicated and refusal violations).

differentiates between those who consent to providing the required breath sample and all others, and it requires that an additional statement "be read aloud only if, after all other warnings have been provided, a person detained for driving while intoxicated either conditionally consents or ambiguously declines to provide a breath sample." *State v. Spell,* 196 *N.J.* 537, 539, 959 *A.*2d 1209 (2008). Because defendant consented to provide the required sample of his breath yet, despite warnings, failed to do so, he remained among those who have consented and, hence, was not entitled to any additional readings.

## I.

In the early morning hours of November 29, 2007, Sergeant Morgan of the Woolwich Township Police Department observed defendant at the wheel of his vehicle, approaching in the opposite direction; defendant was swerving, alternately crossing over the shoulder line into the shoulder and then weaving to cross over the dividing double-yellow lines between the east- and westbound traffic lanes. Sgt. Morgan gave chase, and defendant stopped. While advising defendant of the reason he had been stopped and requesting that defendant produce his driver's license, vehicle registration and proof of insurance, Sgt. Morgan reported that he "immediately could smell a strong odor of an alcoholic beverage coming from [defendant's] breath. [Defendant] appeared to be intoxicated and impaired, as his speech was slow and slurred and his eyes were bloodshot." When asked where he had come from, defendant admitted that he was returning from a bar. The police asked defendant to undergo the standard field sobriety test. However, defendant replied that, because he had a physical handicap, he would be unable to perform that test. The police nevertheless asked that defendant try to complete it; he made some attempts but ultimately stated "he was not going to do the test." Defendant then "was advised he was under arrest, handcuffed, placed in the rear of [Sgt. Morgan's] patrol car, and transported to police headquarters." Sgt. Morgan noted that, "[w]hile en[ ]route

to headquarters, my patrol car filled with a strong odor of an alcoholic beverage, as [defendant] begged me to cut him a break and let him go home."

At police headquarters, defendant was read his *Miranda*[2] warnings and "the standard statement for operators of a motor vehicle." [3]  The Standard Statement explains why a defendant has been arrested; that the law requires that the defendant provide the required breath samples; that a record of the taking of samples will be made and a copy provided to the defendant upon request; that the *Miranda* warnings earlier provided do not apply to the taking of breath samples and that the defendant has no right to have anyone else present during the procedure; that the defendant has the right, at his own expense, to perform independent testing of the samples; that if the defendant refuses to provide the samples, he will be issued a separate summons for the refusal; that any ambiguous or conditional response also will be treated as a refusal; that certain minimum penalties apply for refusal; and that, again, defendant is required by law to provide the required samples.

The Standard Statement further provides that, if a defendant "remains silent; or states, or otherwise indicates, that he/she refuses to answer on the grounds that he/she has a right to remain silent, or wishes to consult an attorney, physician, or any other person; or if the response is ambiguous or conditional, in any respect whatsoever," the police officer administering the test shall read the following additional statement:

> I previously informed you that the warnings given to you concerning your right to remain silent and your right to consult with an attorney, do not apply to the taking of breath samples and do not give you a right to refuse to give, or to delay giving, samples of your breath for the purpose of making chemical tests to

---

[2] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[3] The full text of the "New Jersey Motor Vehicle Commission Standard Statement for Operators of a Motor Vehicle, *N.J.S.A.* 39:4–50.2(e) (rev. & eff. April 26, 2004)" (Standard Statement), can be accessed at http://www.state.nj.us/lps/dcj/agguide/dmvrefnew.pdf.

determine the content of alcohol in your blood. Your prior response, silence, or lack of response, is unacceptable. If you do not agree, unconditionally, to provide breath samples now, then you will be issued a separate summons charging you with refusing to submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood.

Once again, I ask you, will you submit to giving samples of your breath?

[New Jersey Motor Vehicle Commission Standard Statement for Operators of a Motor Vehicle—*N.J.S.A.* 39:4–50.2(e) (rev. & eff. April 26, 2004) (Additional Statement).]

After defendant consented to provide the required breath samples—thereby obviating the need to read the Additional Statement—Patrolman Carson of the Logan Township Police Department "attempted to administer breath testing to [defendant]. He instructed [defendant] to take a deep breath and blow into the mouth piece with one long continuous breath. [Defendant] was advised to continue to blow until he was told to stop. He advised he understood." [4] Ptl. Carson attempted to administer the first breath test, but defendant "refus[ed] to follow the instructions, by only blowing with a short one[-]second breath." The administering officer then "re-instructed [defendant] and [he was] given a second test, in which he again gave a one[-]second breath." [5]

---

[4] The blood alcohol content testing equipment used was an Alcotest machine, "a device that purports to accurately measure the concentration of alcohol from a human subject through breath testing." *State v. Chun*, 194 *N.J.* 54, 78, 943 *A*.2d 114, *cert. denied*, —— *U.S.* ——, 129 *S.Ct.* 158, 172 *L.Ed*.2d 41 (2008). The approved testing procedure for that device is detailed, *id.* at 79–83, 943 *A*.2d 114, and the test subject is required to "produce a breath sample that meets four minimum criteria before the sample is considered to be sufficient for purposes of deriving an accurate test result." *Id.* at 97, 943 *A*.2d 114. Those minimum criteria include minimum volume requirements, a "minimum blowing time of 4.5 seconds[,]" and a minimum volume. *Ibid.*

[5] Although the police report reflects that, as part of the second test, defendant only "gave a one[-] second breath[,]" the Alcohol Influence Report Form produced by the Alcotest machine used to test defendant's blood alcohol content shows that, on the second test, the duration of defendant's breath was 4.9 seconds, which satisfied the durational requirement for the test. That same report shows that for all three tests the required "min[imum] vol[ume was] not achieved[,]" and that on the first and third tests defendant failed to provide the length of breath required for a valid Alcotest reading. Any discrepancy, then, between the police report and the Alcotest Influence Report is not relevant.

Neither of the first two breath samples was of sufficient length and/or volume to generate a valid reading on the testing apparatus. Ptl. Carson, "[b]efore the third test, . . . re-instructed [defendant] and advised [that] if [defendant] did not give a long continuous breath[, it] would be considered a refusal." Defendant "again provided a short one[-] second breath[.]" As a result, defendant "was charged with refusal to give a breath sample, which is documented on the Alcohol Influence Report Form[,]" in violation of *N.J.S.A.* 39:4–50.2.[6]

In the municipal court, defendant consented to be tried on a stipulated record consisting exclusively of the police report and the text of the entire Standard Statement. He nonetheless challenged the refusal charge, claiming that once the police officer had determined to "charge [defendant] with the refusal, . . . he was required to read the [Additional Statement]." Oddly, defendant conceded that, "if the officer was here, he would testify that he did read [the Additional Statement]. However, he did not indicate on the report that he did." The municipal court rejected that claim, stating that from "the plain reading of the refusal paragraphs [in the Standard Statement], it doesn't call for the reading of the [Additional Statement]." The court entered "a finding of guilty on the refusal[,]" and sentenced defendant, as a second repeat offender, to a two-year license revocation of defendant's driving privileges and registration as required by *N.J.S.A.* 39:4–50.4a(a), a forty-eight hour remand to the Intoxicated Drivers Resource Center, plus fines, penalties and surcharges. The municipal court stayed its sentence pending defendant's appeal.

---

[6] Defendant also was issued summonses for driving while intoxicated (DWI), in violation of *N.J.S.A.* 39:4–50; failure to maintain lane, in violation of *N.J.S.A.* 39:4–88; careless driving, in violation of *N.J.S.A.* 39:4–97; and possession of an expired insurance card, in violation of *N.J.S.A.* 39:3–29. In the municipal court, the driving while intoxicated charge was dismissed at the request of the prosecution, while the lane violation, careless driving and expired insurance card charges were merged into the refusal charge.

Defendant filed a de novo appeal to the Law Division, *see R.* 3:23–8(a), where he advanced a two-fold argument: "One, whether [defendant's] actions were a refusal; and Two, whether, even if they were, if his actions did constitute a refusal, whether the State could prove it based on the fact they didn't read [the Additional Statement]." The Law Division rejected those arguments. Initially focusing on defendant's second contention, the court explained that it did not find defendant's answer "to be ambiguous or conditional" and that, as a result, the State was not required to read the Additional Statement. In respect of defendant's first argument—whether his actions in fact and law constituted a refusal—the court explained that it wished to review that matter further and would issue a decision later.

By a letter opinion and order dated November 21, 2008, the court addressed "whether the defendant's failure to provide the appropriate volume of breath for sampling rises to the level of a refusal." The court noted that " 'anything substantially short of an unconditional, unequivocal assent to an officer's request that the arrested motorist take the [alcohol breath] test constitutes a refusal to do so.' " (quoting *State v. Widmaier*, 157 *N.J.* 475, 488, 724 *A.*2d 241 (1999)(quotation omitted)). It factually distinguished *State v. Duffy*, 348 *N.J.Super.* 609, 792 *A.*2d 555 (App.Div.2002): in *Duffy*, although the testing officer "interpreted [the] defendant's response as a refusal, he did not read the [Additional Statement,]" *id.* at 612, 792 *A.*2d 555, whereas, in this case, the court found that "the defendant unconditionally agreed to take the [breath sample] test and was informed that his continued failure to provide a proper breath sample would be considered a refusal." Applying the test embodied in *N.J.S.A.* 39:4–50.4a(a)—whether the operator of a motor vehicle "refuse[d] to submit to a test provided for in [*N.J.S.A.* 39:4–50.2] when requested to do so"—the Law Division concluded that "defendant did knowingly refuse to provide a proper sample and that this has been established beyond a reasonable doubt." It highlighted that, after two failed tries and before administering the test for a third time, the testing officer "warned [defendant] that if this result was not satisfactory[,

defendant] would be charged with refusing." It noted that defendant "was instructed again and administered the test" and that "[t]he third test resulted in the minimum volume again not being achieved." It stated straightforwardly that it did "not find that the State must continue to allow the defendant to try until the [device automatically cut off at the] maximum number of eleven attempts before the defendant can be found guilty of refusal." It summed up: "It was clear here that the defendant was properly instructed and failed to supply the minimal breath sample required for the machine to produce a reading." Adjudging defendant guilty of refusal under *N.J.S.A.* 39:4–50.2, the Law Division imposed the same sentence as had the municipal court.

Defendant again appealed, and the Appellate Division reversed. *Schmidt, supra,* 414 *N.J.Super.* at 203, 997 *A.*2d 1092. Rejecting defendant's claim that the facts were insufficient to sustain a conviction for refusal, the panel reasoned that "defendant unambiguously consented to undergo an Alcotest after being read the first part of the Standard Statement. Nonetheless, he failed on three consecutive occasions to give an adequate breath sample. The officer administering the test regarded defendant's conduct as a refusal, and he was justified in reaching that conclusion." *Id.* at 202, 997 *A.*2d 1092 (citing *State v. Geller,* 348 *N.J.Super.* 359, 362– 65, 791 *A.*2d 1138 (Law Div.2001) (finding refusal when defendant agreed to breath test but then blew air around, rather than into, mouth-piece)).

However, the Appellate Division viewed differently the question of whether, in the circumstances presented, the police were required to read the Additional Statement to defendant. In its view, "[a]lthough the [Additional] Statement need not be read if the defendant unequivocally refuses to take the test, we do not view defendant's apparently inadequate efforts after his prior unequivocal consent to be an unequivocal declaration of intent, but rather, an ambiguous indication of purpose." *Ibid.* (citing *Spell, supra,* 196 *N.J.* at 539–40, 959 *A.*2d 1209). It observed that, "faced with a conditional or ambiguous response, the officer administering the

[breath test] did not read to defendant the [Additional] Statement, but instead merely threatened defendant with prosecution for refusal." *Ibid.* Concluding that "the instruction [of the Additional Statement] was required under the . . . conditional or ambiguous circumstances of this case[,]" *id.* at 203, 997 *A.*2d 1092, the panel stated that "[s]o long as the [Additional] Statement is read and the defendant, without reasonable excuse, continues to produce inadequate breath samples, we find it to be within a police officer's discretion to terminate the [breath test] and charge the defendant with refusal." *Ibid.* It therefore reversed defendant's conviction and sentence for refusing to submit to the breath test.

■ The State sought certification, raising but one issue: "Did the Appellate Division err in mandating that police officers read the [Additional S]tatement whenever a drunk driving defendant unequivocally assents in response to the officer's request that defendant submit to breath testing, but does not provide an adequate breath sample?" That petition was granted. *State v. Schmidt,* 205 *N.J.* 15, 11 *A.*3d 373 (2010). The Association of Criminal Defense Lawyers of New Jersey was granted leave to file a brief as amicus curiae.

II.

The State asserts that, by requiring the reading of the Additional Statement in circumstances where a defendant already has consented to provide a breath sample but fails to do so, the Appellate Division has "added [a] new procedural and substantive step even though the supplemental reading is not required[.]" It notes that, by "ignoring the fact that the police officer did warn defendant, prior to defendant's third attempt at blowing into the instrument, that defendant would be charged with refusal if he did not provide an adequate breath sample[,]" the Appellate Division has "insisted on the formalistic use of the specific language of the [Additional S]tatement[.]" It urges that such "decision intrudes upon the authority of the executive branch as delegated by the Legislature, and violates this Court's holding in [*Spell* ]." It

claims that, in essence, the Appellate Division "has transformed this supplemental warning into an element of the refusal offense."

Defendant argues that, despite defendant's consent to provide the samples of his breath, under *Widmaier, supra,* his actions as a whole fell short of an "unconditional unequivocal assent" to the breath test and that, in those circumstances, the police officer was required to read the Additional Statement. Relying heavily on *Duffy, supra,* defendant asserts that his post-consent actions "demonstrated that defendant did not unequivocally consent to taking the test[,]" 348 *N.J.Super.* at 612, 792 *A.*2d 555, thereby requiring that the Additional Statement be read.

Amicus the Association of Criminal Defense Lawyers of New Jersey urges the adoption of a simple standard: the failure to provide a sufficient sample equals an ambiguous response to the questions presented in the Standard Statement, thereby automatically triggering the State's obligation to read the Additional Statement to the defendant.

### III.

We have noted that, "[i]n 1981, the Legislature engaged in a substantial and comprehensive revision of our laws governing the operation of motor vehicles by intoxicated persons." *State v. Cummings,* 184 *N.J.* 84, 88, 875 *A.*2d 906 (2005). "As part of that revision, the Legislature provided that a person arrested for operating a motor vehicle while intoxicated who refuses to submit to a chemical test of his breath to determine the content of alcohol in his blood would be subject to certain enumerated, enhanced penalties." *Id.* at 88–89, 875 *A.*2d 906. Those changes were "intended 'to curb the senseless havoc and destruction caused by intoxicated drivers,'" *id.* at 92, 875 *A.*2d 906 (quoting *State v. Tischio,* 107 *N.J.* 504, 512, 527 *A.*2d 388 (1987)), and resulted in the refusal statute that provides, in full, as follows:

(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical

tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act [C.39:4–50.1 et seq.] and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of R.S. 39:4–50 or section 1 of P.L.1992, c. 189 (C.39:4–50.14).

(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.

(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.

(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.

(e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant. The police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test in accordance with section 2 [C.39:4–50.4a] of this amendatory and supplementary act. A standard statement, prepared by the chief administrator, shall be read by the police officer to the person under arrest.

[*N.J.S.A.* 39:4–50.2.]

This appeal focuses on the requirements of subsection (e) of that statute. Central to that inquiry are the dual questions of what and how much must be read to a defendant in the way of a Standard Statement before a refusal conviction will lie.

The answer to the first of those questions is provided in the refusal statute itself. *N.J.S.A.* 39:4–50.2(e) explicitly provides that "[t]he police officer shall, however, inform the person arrested of the consequences of refusing to submit to such test ... [and a] standard statement, prepared by the chief administrator [now the Attorney General], shall be read by the police officer to the person under arrest." Therefore, save for the penalties that may be imposed under *N.J.S.A.* 39:4–50.4a, the substance of the Standard Statement has been delegated by the Legislature to the Executive Branch, pointedly not to the Judicial Branch.

Once the question of what must be disclosed in the Standard Statement is laid to rest, the corollary question of how much must be disclosed seems self-evident: provided the Standard Statement clearly delineates the penalties for a refusal, the statutory man-

dates are satisfied. That said, in *Widmaier, supra,* this Court addressed whether statements that fall short of a clear-cut refusal—in that case, a request to have a lawyer present—nevertheless constitute a refusal. It determined that "[b]ecause a police officer has no duty to bring a defendant to the [breath testing] machine, instruct him to blow into it, and wait for defendant to protest in order to determine that the defendant has refused, . . . [a d]efendant's conditional and ambiguous response appropriately was understood by the officer to be a refusal." 157 *N.J.* at 498, 724 *A.*2d 241. *Widmaier,* however, recognized that "it may be in the interest of both law enforcement officials and the driving public to amend the standard statement in order to eliminate any ambiguity concerning a motorist's intent to submit to the test." *Ibid.* It acknowledged that the authority to adopt that amendment lay not with the Judiciary, but with the Executive Branch and, deferring to the proper branch of government, it recommended

> a modification of the instructions accompanying the statement that directs the police officer, in the event the motorist's response to the standard statement is conditional in any respect whatsoever, to then inform the motorist that the prior response is unacceptable and that, unless the motorist consents unconditionally to the taking of breath samples, a summons alleging violation of the breathalyzer statute will issue.
>
> [*Ibid.*]

It further urged the Executive Branch "to consider revising the standard statement to further ensure that suspects understand that an ambiguous or conditional answer to a request to submit to a breathalyzer test will be deemed a refusal." *Id.* at 498–99, 724 *A.*2d 241.

That request did not fall on deaf ears. Heeding this Court's recommendation, the Executive Branch added the Additional Statement at issue in this appeal, but limited its application solely to those instances where a defendant "remains silent; or states, or otherwise indicates, that he/she refuses to answer on the grounds that he/she has a right to remain silent, or wishes to consult an attorney, physician, or any other person; or if the response is ambiguous or conditional, in any respect whatsoever[.]" *See supra* at n. 3. Given the limited nature of the Executive Branch's

actions, the relevant question then becomes whether defendant's repeated failures to provide sufficient breath volume for a sufficient amount of time constituted an "ambiguous or conditional" response sufficient to require the need for the Additional Statement.

In answering that question, we tread on previously traveled ground. In *Spell, supra,* this Court addressed an Appellate Division decision that, as a prophylactic, required that police officers read the Additional Statement "whenever a defendant does not unconditionally agree to the test[,]" or "refuses to immediately take the [breath test] upon request." *State v. Spell,* 395 *N.J.Super.* 337, 348, 928 *A.*2d 921 (App.Div.2007), *modified and aff'd,* 196 *N.J.* 537, 959 *A.*2d 1209 (2008). Regardless of the perceived value of that holding, this Court vacated that extension of the application of the Additional Statement because it did violence to the separation of powers doctrine. *Spell, supra,* 196 *N.J.* at 539, 959 *A.*2d 1209. The Court noted that "the Legislature has vested in the Chief Administrator of the Motor Vehicle Commission (formerly the Director of the Division of Motor Vehicles) [now the Attorney General] the authority to determine the contents and procedure to be followed in respect of that standard statement[,]" and that, provided the minimum disclosures required by the Legislature appear in the Standard Statement, the Judiciary should defer to what the Executive Branch properly has adopted. *Id.* at 539–40, 959 *A.*2d 1209. As *Spell* stated plainly: "the decision to amend the standard statement is vested in the sound discretion of the Chief Administrator [now the Attorney General.]" *Id.* at 540, 959 *A.*2d 1209.

And, more recently addressing whether the Standard Statement should be provided in languages other than English, this Court has explained that

[t]he executive branch, and not the courts, is best-equipped to respond to those concerns and still satisfy the statutory command to inform motorists of the consequences of refusal. *N.J.S.A.* 39:4–50.2(e). We defer to the executive branch agency to fashion a proper remedy. The Legislature authorized the [Executive Branch] to develop the standard statement, *see N.J.S.A.* 39:4–50.2(e), and we have

consistently deferred to the [Executive Branch] regarding it. *See* [*Spell, supra,*] 196 *N.J.* [at] 539–40 [959 *A.*2d 1209] ... (referring procedure outlined by Appellate Division for consideration by [Executive Branch]); *Widmaier, supra,* 157 *N.J.* at 498–99 [724 *A.*2d 241] (recommending that [Executive Branch] supplement standard statement to address conditional response by motorist); [*State v.*] *Leavitt,* 107 *N.J.* [534,] 541–42 [527 *A.*2d 403 (1987)] (recommending that [Executive Branch] revise standard statement "to advise the suspect that his right to consult with an attorney before giving any oral or written statement does not give him the right to refuse to give (or to delay giving) the breath sample when requested").

[*State v. Marquez,* 202 *N.J.* 485, 511–12, 998 *A.*2d 421 (2010) (internal quotation marks and editing marks omitted).]

Unlike it had in *Spell,* the Appellate Division here did not impose a new requirement. Instead, it concluded that, in the circumstances presented, defendant's thrice failed attempts to provide a sufficient breath sample for testing rendered his earlier unambiguous and unconditional assent to submit to the breath test somehow ambiguous or conditional, thereby triggering the obligation to read the Additional Statement. We do not agree.

At the outset, it is telling that defendant never has asserted that he was somehow unable to provide the volume and length of breath required for a valid reading; he claims no limitation, whether by physical condition, disease, or some other verifiable cause, that somehow prevented him from providing the breath samples as required.[7] Therefore, the question is whether defendant's failure to provide proper breath samples despite repeated warnings, standing alone, was sufficiently "ambiguous or conditional" to require the reading of the Additional Statement. Because defendant unequivocally consented to the breath test, his later failures to provide the necessary volume and length of breath samples did not render his earlier consent ambiguous or conditional.

Further, the Appellate Division's reliance on *Duffy* is misplaced. In *Duffy, supra,* then Judge (later Justice) Wallace addressed

---

[7] In contrast, it is starkly revealing that, when asked to perform the physical field sobriety test—one that would have included balance testing—defendant demurred, claiming that his physical handicap would not permit him to complete the field sobriety tests.

circumstances where the defendant first stated he would submit to a breath test, but then informed the officer that "he was sick and could not take the test." 348 *N.J.Super.* at 610, 792 *A.*2d 555. When the defendant again was asked to take the test, he "replied that he thought he could take it." *Ibid.* As he was being taken from the holding cell to the test site, the police officer "noticed defendant sticking his fingers down his throat as if he were trying to vomit." *Ibid.* The officer "asked defendant again if he was going to take the test[ and d]efendant replied, 'I'll take the test, but it's under duress.'" *Id.* at 610–11, 792 *A.*2d 555. No test was administered, and the defendant was charged with refusal. Faced with those troubling facts, the Appellate Division noted that it had "considerable reservation about whether defendant's comment that he would 'take the test but it's under duress,' placed a condition on taking the test[,]" *id.* at 612, 792 *A.*2d 555, sufficient to trigger the reading of the Additional Statement. In that context, however, because "defendant was not informed that his response was unacceptable, and that unless he responded 'yes,' a summons alleging violation of the breathalyzer statute would issue[,]" the Appellate Division reluctantly concluded that "the failure to inform defendant that his response was considered a refusal, and that unless he replied yes he would be cited for a refusal, to be a fatal defect in the State's case." *Id.* at 612–13, 792 *A.*2d 555.

*Duffy* represents the flip side of the facts of this appeal, and it is entirely consistent with the principle of law governing the disposition of this case. Here, defendant clearly and specifically was informed that his failure to provide sufficient breath to produce a valid test result during his third try would be considered a refusal, and there was nothing ambiguous or conditional either in the warning provided or in defendant's failure to heed that warning. Furthermore, because the content of the Additional Statement neither references nor addresses the failure to provide the required breath samples, the requirement that it be read in these circumstances lacks a foundation in fact.

■ For all of the foregoing reasons, we are compelled to reject the Appellate Division's extension of the Additional Statement as unwarranted. Again, as a question of law, the authority to define the contents of the Standard Statement vests in the Executive Branch, as delegated by the Legislative Branch. Further, as a matter of fact, all parties agree that defendant consented to provide his breath samples for testing and, once that consent is given, it cannot be vitiated, impeached or otherwise revoked by a defendant's unilateral actions aimed at defeating the testing process. To hold otherwise would result in a conclusion at odds with the clear purpose of the entire intoxicated driver statutory scheme: a defendant's unexplained and repeated failures to provide the necessary breath amounts to produce valid test results would be no different than the anecdotal acts of another who intentionally seeks to skew the test results by rapidly consuming additional alcohol and claiming that the test results reflect only post-driving drinking, or one who places foreign objects in his mouth also for the sole purpose of affecting the test results. *See, e.g., Chun, supra,* 194 *N.J.* at 79, 943 *A.*2d 114 (requiring that test operators "must wait twenty minutes before collecting a sample to avoid overestimated readings due to residual effects of mouth alcohol[,]" that "the operator must observe the test subject for the required twenty-minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence[,]" and that "if the arrestee swallows anything or regurgitates, or if the operator notices chewing gum or tobacco in the person's mouth, the operator is required to begin counting the twenty-minute period anew").

We add the following. No due process notice considerations have been raised by the parties to this appeal in respect of defendant's failure to submit to the test and, hence, we need not address that question. *See Simmermon v. Dryvit Sys., Inc.,* 196 *N.J.* 316, 330, 953 *A.*2d 478 (2008) (explaining that " 'minimum procedural requirements' [of due process] are 'notice plus an opportunity to be heard and participate in the litigation' " (quoting *Phillips Petroleum Co. v. Shutts,* 472 *U.S.* 797, 811–12, 105 *S.Ct.*

2965, 2974, 86 *L.Ed.*2d 628, 641–42 (1985))). Furthermore, the parties concede that, before the third and last test, defendant explicitly was warned that the failure to provide sufficient breath for the third time would result in a refusal charge, and defendant has made no claim that he did not understand or otherwise failed to appreciate the gravity of that warning. Finally, during oral argument, the Attorney General represented that a notice to that effect is posted at each breath testing location in the State and, at the Court's request, the State supplemented that response.[8] The aggregate of those facts leads us to conclude that there are no due process notice concerns directly at issue in this appeal.

That said, for the avoidance of future doubt and to provide consistency of administration, the inclusion in the main body of the Standard Statement of a notice to a DWI arrestee that the failure to provide sufficient breath volume for a sufficient period of time will constitute a refusal to submit to the breath test is both reasonable and salutary. Consistent with our earlier expressions in both *Widmaier* and *Spell,* we recommend to the Attorney General that the main text of the Standard Statement be supplemented to address specifically those instances where a DWI arrestee attempts to manipulate the results of the breath test, which supplement should inform the arrestee of the consequences of failing to submit fully and completely to the breath test requirements. That notice should avoid any future due process claims arising out of facts similar to those present in this appeal.

---

[8] In its post-argument certification, the State represented that each breath test examiner is instructed to inform the test subject as follows: "Advise subject: 'I want you to take a deep breath and blow into the mouthpiece with one long continuous breath. Continue to blow until I tell you to stop. Do you understand these instructions?'" The State also certified that, "when a breath testing instrument is placed into service, the State Police breath test coordinator affixes a copy of these blowing instructions above the instrument" and that "as part of their training on the Alcotest instrument, breath test operators are taught to read the instructions for blowing into the instrument to the subject before the taking of every breath sample."

## IV.

The judgment of the Appellate Division is reversed, the stay of defendant's sentence is vacated, defendant's conviction and sentence are reinstated, and the case is remanded to the Law Division to implement defendant's sentence without additional delay.

Judge STERN (temporarily assigned), concurring.

The majority concludes that defendant "unequivocally" and unconditionally consented to give a breath test and that the additional warning required by *N.J.S.A.* 39:4–50.2(e) did not have to be read to him in order to sustain his conviction for refusal to provide a breath sample. *See N.J.S.A.* 39:4–50.2(a); 39:4–50.4(a). I believe that, even when defendant unequivocally and unconditionally consented to give an adequate breath sample at the outset, once his efforts proved to be insufficient, he had to be further advised about his obligation to provide an adequate sample and the consequences of not doing so. Because defendant was sufficiently advised in this case, I concur in the judgment.

The case was presented to the municipal court on a stipulated record. The parties stipulated that the police report, the standard statement to be read under *N.J.S.A.* 39:4–50.2, and the "Alcohol Influence Report Form" for an Alcotest 7110 MKIII–C machine should be admitted into evidence. As a result, the parties agreed there was probable cause to arrest defendant for driving while intoxicated, *N.J.S.A.* 39:4–50, and that defendant made three attempts to blow into the Alcotest and give two breath samples. He provided samples of 0.0 liters over 0.3 seconds, 1.2 liters over 4.9 seconds, and 1.2 liters over 3.3 seconds. On each occasion the machine recorded "min. vol. not achieved." The municipal court concluded that the facts did not call for the reading of the additional statement, and found defendant guilty of refusal.[1]

---

[1] The DWI was dismissed because the State indicated it could not prove its case. *See* "Guidelines for Operation of Plea Agreements in the Municipal Court of New Jersey," appendix to Part VII.

At the trial de novo, the Law Division found that "the defendant unequivocally said he would take the test [s]o there's nothing equivocal or conditional or ambiguous about his reply." The judge found defendant guilty of "refusal" because the officer told defendant that his breath sample was not sufficient, and "that if he didn't provide a proper one it would be deemed a refusal." In its written opinion, the Law Division concluded:

> the defendant did knowingly refuse to provide a proper sample and that this has been established beyond a reasonable doubt. On two tries it is uncontested that the Defendant did not reach 1.5 liters. The officer warned him that if this result was not satisfactory he would be charged with refusing. He was instructed again and administered the test. The third test resulted in the minimum volume again not being achieved. The Court does not find that the State must continue to allow the defendant to try until the maximum number of eleven attempts before the defendant can be found guilty of refusal. It was clear here that the defendant was properly instructed and failed to supply the minimal breath sample required for the machine to produce a reading.

In *State v. Widmaier*, 157 *N.J.* 475, 724 *A.*2d 241 (1999), this Court (although finding a double jeopardy preclusion) held that a defendant's request to have an attorney present before agreeing to take a breathalyzer test was a "conditional" response, "not rising to the level of the unequivocal consent needed to proceed with a breathalyzer test," and therefore constituted a "refusal." *Id.* at 497–98, 724 *A.*2d 241. The Court nevertheless recommended to the appropriate Executive Branch officer that the standard statement be amended "to eliminate any ambiguity concerning a motorist's intent to submit to the test." *Id.* at 498, 724 *A.*2d 241. The "Additional Instructions for Police Officer" were added to the form, and they require the reading of the "additional statement" if defendant's "response is ambiguous or conditional *in any respect whatsoever.*" *State v. Schmidt*, 414 *N.J.Super.* 194, 196, 203, 997 *A.*2d 1092 (App.Div.2010) (emphasis added). That statement "shall be read by the police officer to the person under arrest," *N.J.S.A.* 39:4–50.2(e).

In *State v. Duffy*, 348 *N.J.Super.* 609, 792 *A.*2d 555 (App.Div. 2002), a defendant, after saying he would take a breathalyzer test, indicated that he was doing so "under duress," and was returned to his cell without testing. *Id.* at 610–11, 792 *A.*2d 555. Speaking

through Judge (later Justice) Wallace, the Appellate Division held that "once [the officer] interpreted the response as a refusal," he was obligated to read the second part of the Standard Statement, and his failure to do so invalidated the conviction. *Id.* at 612–13, 792 *A.*2d 555. In other words, simply because the defendant said he consented to the breath test in the first place does not eliminate the possibility of an ambiguity being created by his subsequent conduct.

However, even though the additional statement embodied in the form provided by *N.J.S.A.* 39:4–50.2(e) did not have to be read by virtue of the initial consent, once defendant provided less than the minimum volume necessary to produce a reading, due process required that defendant be advised that he had to provide a breath sample sufficient to meet the minimum breath sample requirements in terms of volume and time, in the absence of which he would be arrested for "refusal." *See State v. Chun,* 194 *N.J.* 54, 97–105, 152, 943 *A.*2d 114 (2008) (minimum requirements). *See also State v. Marquez,* 202 *N.J.* 485, 506, 998 *A.*2d 421 (2010) (noting that defendant must be informed of consequences of refusing to take breathalyzer test); *State v. Bernhardt,* 245 *N.J.Super.* 210, 219, 584 *A.*2d 854 (App.Div.1991) (reiterating that refusal occurs only after officer informs defendant of "the consequences of refusing").

Here, the stipulation included admission into evidence of an "Investigative Report" which stated that "[b]efore the third test, Mr. Schmidt was re-instructed and advised if he did not give a long continuous breath that he would be considered a refusal." In other words, defendant was given adequate notice of the consequences of his conduct. I consider such advice to be the minimum required, but sufficient to comply with due process,[2] and concur in the judgment affirming defendant's conviction for refusal.

---

[2] I believe adoption of the recommendation embodied in the last paragraph of Point III of the majority opinion will go a long way to solving the problem in this case. *Ante* at 88–89, 19 *A.*3d at 467–68. My view in this case, however, does

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS, STERN (temporarily assigned)—7.

*Opposed*—None.

---

not turn on any concern about the form or its amendment as opposed to the proofs required as a matter of due process.