NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2186-13T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

IRIS QUINTERO,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 27, 2016**
>
> **APPELLATE DIVISION**

Argued December 8, 2015 — Decided January 27, 2016

Before Judges Hoffman, Leone and Whipple.[1]

On appeal from Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6050.

Greggory M. Marootian argued the cause for appellant.

Kimberly L. Donnelly, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Grace H. Park, Acting Union County Prosecutor, attorney; NaSheena D. Porter, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

HOFFMAN, J.A.D.

---

[1] Judge Whipple did not participate in oral argument. She joins the opinion with counsel's consent. R. 2:13-2(b).

Defendant appeals from her de novo conviction for refusal to submit to a breath test, N.J.S.A. 39:4-50.4a. Defendant argues that her conviction should be vacated because the Attorney General's current standard statement under N.J.S.A. 39:4-50.2(e) is fundamentally deficient for not specifying the mandatory minimum penalties for refusal. For the reasons that follow, we affirm.

I.

On December 7, 2012, defendant consumed several vodka and cranberry juice cocktails before driving her vehicle in Roselle Park. Defendant's tire blew out, but she continued driving on the tire rim until the Roselle Park Police finally stopped her. After defendant failed street sobriety tests, the officer transported her to police headquarters. There, defendant refused to submit to a breath test, even after the officer read the standard statement[2] indicating the consequences if she did not take the breath test.

The officer charged defendant with driving while intoxicated (DWI), N.J.S.A. 39:4-50, refusal to submit to a

---

[2] The full text of the "N.J. Attorney General's Standard Statement for Motor Vehicle Operators (N.J.S.A. 39:4-50.2(e)) (rev. & eff. July 1, 2012)" can be found at http://www.njsp.org/divorg/invest/pdf/adtu/070912_dwi_standardstatement.pdf.

breath test, N.J.S.A. 39:4-50.4a,[3] and careless driving, N.J.S.A. 39:4-97. In the Roselle Park Municipal Court on February 28, 2013, defendant pled guilty to DWI and entered a conditional guilty plea to the refusal charge, reserving her right to challenge the sufficiency of the standard statement on appeal.[4] On the DWI charge, the court imposed a $406 fine, $33 in court costs, a $200 DWI assessment, a $75 Safe Neighborhood Services Fund assessment, a $50 Violent Crimes Compensation Board penalty, twelve hours of Intoxicated Driver Resource Center classes, and a three-month license suspension to run concurrent with the refusal sentence. On the refusal charge, the court sentenced defendant to a $506 fine, a $100 DWI assessment, $33 in court costs, seven-month loss of license, and six months with an ignition interlock. The court stayed the refusal portion of the sentence pending de novo appeal to the Law Division.

On October 28, 2013, Judge Regina Caulfield found defendant guilty and imposed the same sentence for defendant's refusal conviction. The judge memorialized her decision in a November 27, 2013 order, which further stayed the refusal sentence pending this appeal.

---

[3] The e-ticket for this charge incorrectly listed the violated statute as N.J.S.A. 39:4-50.2; however, this mistake has not been raised as an issue in the instant appeal.

[4] The court dismissed the careless driving charge.

Defendant presents the following issue in this appeal:

> THE CHARGE OF REFUSAL TO SUBMIT IS FUNDAMENTALLY FLAWED. THE NEW JERSEY MOTOR VEHICLE STANDARD STATEMENT READ TO QUINTERO FAILED TO "INFORM [QUINTERO] OF THE CONSEQUENCES OF REFUSING TO SUBMIT" AS REQUIRED BY [N.J.S.A. 39:4-50.2(e)].

## II.

On this appeal, we do not review the fact-findings of the Law Division, which are generally entitled to our deference. State v. Johnson, 42 N.J. 146, 158-59 (1964). Rather, we review the court's legal determination regarding the sufficiency of the standard statement. Where, as here, the issues turn on purely legal interpretations, our review is plenary. State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012).

## A.

New Jersey's drunk-driving legislation is designed "to curb the senseless havoc and destruction caused by intoxicated drivers." State v. Marquez, 202 N.J. 485, 496 (2010) (quoting State v. Tischio, 107 N.J. 504, 512 (1987)). "To improve enforcement efforts and address the high rate of refusal by motorists who declined to submit to blood-alcohol tests, the Legislature in 1966 enacted the implied consent law, N.J.S.A. 39:4-50.2, and the refusal law, N.J.S.A. 39:4-50.4a." State v. O'Driscoll, 215 N.J. 461, 472-73 (2013) (citing Marquez, supra,

202 N.J. at 497). Accordingly, all motorists on New Jersey roads are "deemed to have given . . . consent" to a breath test under the implied consent law. Id. at 473 (citing L. 1966, c. 142, § 2 (codified as amended at N.J.S.A. 39:4-50.2)).

The implied consent law was amended in 1977 to require that "[a] standard statement, prepared by the chief administrator, shall be read by the police officer to the person under arrest" to inform him or her of the consequences of refusing to submit to a breath test. N.J.S.A. 39:4-50.2(e). In 2009, the responsibility for the promulgation of that statement was transferred to the Attorney General. 41 N.J.R. 2825(a). Our Supreme Court has explained that "the refusal statute requires officers to request motor vehicle operators to submit to a breath test; the implied consent statute tells officers how to make that request." Marquez, supra, 202 N.J. at 501. Marquez also identified the elements of a refusal conviction:

> (1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs; (2) defendant was arrested for driving while intoxicated; (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and (4) defendant thereafter refused to submit to the test.
>
> [Id. at 503 (citations omitted).]

Pursuant to the implied consent law, N.J.S.A. 39:4-50.2(e), the Attorney General's current standard statement (revised and effective July 1, 2012), to be read to motor vehicle operators to inform them of the consequences of refusing to submit to a breath test, provides, in pertinent part:

> 5. If you refuse to provide samples of your breath, you will be issued a separate summons for the refusal. A court may find you guilty of both refusal and driving while intoxicated.
>
> 6. If a court finds you guilty of the refusal, you will be subject to various penalties, including license revocation of up to 20 years, a fine of up to $2000, installation of an ignition interlock, and referral to an Intoxicated Driver Resource Center. These penalties may be in addition to penalties imposed by the court for any other offense of which you are found guilty.

B.

Defendant contends that the Attorney General's standard statement is defective because it does not inform motorists of the mandatory minimum penalties. In particular, defendant argues that the standard statement "does not adequately explain and delineate the penalties for a refusal conviction" because the statement explains the license loss exposure as "license revocation of up to 20 years." This is problematic, defendant argues, because "defendant was not told that she would face a

license loss for a <u>minimum</u> of seven months" and that "up to 20 years can mean anywhere between 0 days to 20 years." Similarly, defendant argues that the standard statement is flawed because it explains that defendant will be subject to "a fine of up to $2000" while failing to mention that a defendant's first refusal offense is "not less than $300 or more than $500 for a first offense." <u>See</u> <u>N.J.S.A.</u> 39:4-50.4a. The statement is similarly flawed, defendant continues, because it merely mentions the "installation of an ignition interlock," while the refusal statute mandates an ignition interlock for a first offender for "not less than six months or more than one year." <u>See</u> <u>N.J.S.A.</u> 39:4-50.17(a)(1).

Our Supreme Court has previously recognized that "as a question of law, the authority to define the contents of the Standard Statement vests in the Executive Branch, as delegated by the Legislative Branch." <u>State v. Schmidt</u>, 206 <u>N.J.</u> 71, 87 (2011); <u>see also</u> <u>Marquez</u>, <u>supra</u>, 202 <u>N.J.</u> at 511 ("The executive branch, and not the courts, is best-equipped to respond to those concerns and still satisfy the statutory command to inform . . . motorists of the consequences of refus[al] . . . . We defer to the executive branch agency . . . to fashion a proper remedy . . . .") (internal quotation marks and citation omitted).

Recently the issue of whether the standard statement was defective, "because it does not inform drivers of the mandatory minimum period of time their license will be suspended if they refuse," was brought to our Court's attention. O'Driscoll, supra, 215 N.J. at 480. However, because this issue was raised by an amicus curiae, the Court in its discretion "[did] not opine in any way on the content of the current statement." Id. at 479-80. O'Driscoll, however, still can illuminate the current issues and provide some guidance with respect to the standard statement at issue.

In O'Driscoll, our Court reinstated a DWI defendant's refusal conviction after determining that the misinformation provided to him was inconsequential and consisted of minor discrepancies that were not material to the defendant's decision to refuse the breath test. Id. at 479-80. In particular, the police officer mistakenly read from an outdated form and told the defendant that if he refused, the minimum period of license revocation was six months, not seven; the minimum fine was $250, not $300; and the maximum fine was $1000, not $2000. Id. at 465. The officer, however, did correctly tell defendant that his license could be revoked for up to twenty years. Ibid. The Court held that the officer's mistakes were inconsequential, and that the officer informed defendant "of the consequences of

refusal in a manner that should have impelled a reasonable person to comply." Id. at 479. In particular, the Court continued, it was "difficult to see how the minor discrepancies in this case could have influenced [defendant's] decision." Ibid. As such, "courts are to examine whether a defendant reasonably would have made a different choice and submitted to a breath test had the officer not made an error in reciting the statement. An immaterial variation from the standard form does not require reversal of a conviction for refusal." Id. at 466.

With this guidance, we agree with Judge Caulfield that the standard statement is sufficient, and we affirm defendant's refusal conviction. Defendant's argument that she was not given an accurate picture of the penalties she faced as a first-time offender lacks merit. Rather, as Judge Caulfield observed:

> It defies logic to assume that defendant[,] having refused a breath test knowing that she could be fined up to $2,000 and lose her license for 20 years[,] would have submitted to a . . . breath test, if she was told her license might be revoked for only seven months with a fine of only $500.

We are satisfied that the current standard statement satisfies the statutory mandate — that is, informing motorists and impelling compliance — by adequately informing drivers of the maximum potential license revocation and fine, and the possibility of ignition interlock, that they face for refusal.

In so ruling, we note that adding other details, including the differing mandatory minimum and maximum penalties for first offenders, second offenders, and certain third offenders, may run the risk of submerging the most significant penalties in those details. Such a statement could confuse persons who are suspected of being under the influence, whose number of prior offenses may be unclear, and dilute the persuasive effect that is a central purpose of the standard statement.

Moreover, defendant, having refused after being informed of the maximum penalties, has not shown that she "reasonably would have made a different choice and submitted to a breath test" had additional information been provided. O'Driscoll, supra, 215 N.J. at 466. It is implausible that defendant would have submitted to the breath test if informed of mandatory minimums for a first offender. Accordingly, we conclude that the current standard statement is not defective for failing to inform drivers of the mandatory minimum penalties for refusal. The standard statement provides sufficient information for drivers to make an objectively reasonable choice on whether to submit to a breath test.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION