**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0826-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DENISE R. FLAHERTY,

     Defendant-Appellant.

_____

Submitted October 23, 2019 — Decided November 13, 2019

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Municipal Appeal No. 18-8.

Trinity & Farsiou, LLC, attorneys for appellant (Steven D. Farsiou, on the briefs).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Lauren E. Bland, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On September 8, 2017, Branchburg police officers charged defendant with driving while intoxicated (DWI), N.J.S.A. 39:4-50; refusal to submit to a breath test (refusal), N.J.S.A. 39:4-50.4a; obstructed view, N.J.S.A. 39:3-74; and improper turn, N.J.S.A. 39:4-126. On May 8, 2018, defendant entered guilty pleas to DWI and refusal, conditioned upon her right to challenge on appeal the sufficiency of the standard statement police officers are required to read to motor vehicle operators arrested for DWI to inform them of the consequences of refusing to submit to a breath test.

During her plea allocution, defendant admitted that before operating a motor vehicle on the date in question, she consumed alcoholic beverages, which impaired her ability to drive. She also refused to provide a breath sample at the police station after being read the standard statement by the arresting officer. Additionally, defendant testified this was her first offense, and had the standard statement informed her of the mandatory minimums for a first time offender, she would have provided the breath samples.[1]

---

[1] As a first time offender whose violation did not occur "on or within 1,000 feet of any school property or while driving through a school crossing[,]" in addition to other sanctions, defendant was subject to driver's license revocation "for not less than seven months or more than one year . . . ." N.J.S.A. 39:4-50.4a.

The municipal court judge accepted defendant's guilty pleas, suspended defendant's driver's license for an aggregate term of seven-months,[2] imposed a series of mandatory monetary fines and penalties, directed her to install an ignition interlock device on her car for six months, and ordered her to serve twelve hours in the Intoxicated Driver Resource Center (IDRC). The municipal court judge also dismissed the remaining charges and stayed the execution of the sentence pending appeal to the Law Division, pursuant to Rule 7:13-2.

Defendant argued her de novo appeal in the Law Division on September 19, 2018. After reviewing the record developed before the municipal court and considering the arguments of counsel, on September 24, 2018, the Law Division judge denied defendant's motion to dismiss the refusal charge based on the sufficiency of the standard statement and continued the "stay on the penalty pending further appeal."

Defendant now appeals from the September 24, 2018 Law Division order, raising the following arguments for our consideration:

> I.[3]  THE LOWER COURT ERRED IN HOLDING THAT THE STANDARD STATEMENT

---

[2]  The judge imposed a ninety-day driver's license suspension on the DWI, and a concurrent seven-month driver's license suspension on the refusal.

[3]  We have eliminated the point heading describing the standard of review and renumbered the remaining points accordingly.

A-0826-18T4

SUFFICIENTLY PROVIDES A DRIVER WITH ALL OF THE CONSEQUENCES OF REFUSING TO PROVIDE A BREATH SAMPLE AS REQUIRED PURSUANT TO N.J.S.A. 39:4-50.2(E).

II. THE COURT ERRED IN HOLDING THAT THE MANDATORY MINIMUMS FOR A REFUSAL WERE NOT NECESSARY FOR INCLUSION ON THE [STANDARD] STATEMENT BECAUSE A REASONABLE PERSON WOULD UNDERSTAND THE SERIOUS CONSEQUENCES OF DRUNK DRIVING AS IT DIRECTLY [CONTRADICTS] THE LANGUAGE OF THE STANDARD STATEMENT.

III. THE LOWER COURT ERRED WHEN IT HELD THAT THE CURRENT STANDARD STATEMENT SATISFIES THE STATUTORY REQUIREMENT OF SETTING FORTH THE CONSEQUENCES OF REFUSING AS IT MISINFORMS A DRIVER THAT THERE ARE NO MANDATORY MINIMUM PENALTIES FOR REFUSING, THEREBY INCREASING THE LIKELIHOOD OF REFUSALS IN DIRECT CONTRAVENTION OF THE VERY PURPOSE OF READING THE FORM.

We reject these arguments and affirm.

Pertinent to this appeal, the Law Division judge recounted the following undisputed facts:

When [d]efendant was arrested and brought to police headquarters for processing, the arresting officer observed her for [twenty] minutes. She was then read the New Jersey Attorney General's Standard Statement for Breath Testing . . . by Branchburg Police intended to inform her of the consequences of refusing to submit breath samples. The statement reads in relevant part:

4

> If the [c]ourt finds you guilty of the refusal, you will be subject to various penalties, including license revocation of up to [twenty] years, a fine of up to $2000, installation of an ignition interlock device, and referral to an [IDRC]. These penalties may be in addition to penalties imposed by the [c]ourt for any other offense of which you are found guilty. . . .
>
> Defendant refused to provide a breath sample after being read the statement.

The judge posited that "[t]he issue raised by the [d]efense is that the [s]tatement as written failed to adequately inform [d]efendant of the consequences of refusing the test because the [s]tatement did not include the minimum penalties or a gradation of penalties." Analogizing the circumstances to "a plea alloc[u]tion" where "the [c]ourt voir dires the [d]efendant" on his or her "understand[ing]" of "the potential maximum penalty," the judge "fail[ed] to see how knowledge of the minimum penalties" or "knowledge of a gradation of penalties would alter [d]efendant's decision to refuse the test."

Further, the judge noted "[i]t would be overly burdensome . . . to impose a requirement [for] a list of all the potential sentencings and gradations for each offense" because "the potential minimum sentencing and all the gradations of the offense could be vastly different depending upon a [d]efendant's prior record." Additionally, the judge refuted defendant's contention "that these

maximum penalties are misleading because they are 'almost legally impossible,'" explaining, "these penalties could be imposed." See N.J.S.A. 39:4-50.4a(b). Finally, the judge rejected defendant's argument "that the language of the [s]tatement would lead a reasonable person to think that they could only receive a single day of license suspension and no fine . . . considering the seriousness of drunk driving and the increased penalties imposed by the Legislature."

The judge concluded "the [s]tatement served to inform [d]efendant of the consequences of refusing the test" by "accurately inform[ing] [d]efendant of the maximum penalties she was subject to had she refused the test." Thus, "[d]efendant . . . was fully informed of the . . . consequences of refusal[,]" and "[t]he standard [s]tatement read to [d]efendant . . . clearly fulfill[ed] the Legislative intent that [d]efendant be informed of the mandatory nature of the test in such a way as to impel compliance with the test." This appeal followed.

"On this appeal, we do not review the fact-findings of the Law Division, which are generally entitled to our deference." State v. Quintero, 443 N.J. Super. 620, 623-24 (App. Div. 2016) (citing State v. Johnson, 42 N.J. 146, 158-59 (1964)). "Rather, we review the court's legal determination regarding the sufficiency of the standard statement." Id. at 624. "Where, as here, the issues

turn on purely legal interpretations, our review is plenary." Ibid. (citing State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011)).

"New Jersey's drunk-driving legislation is designed 'to curb the senseless havoc and destruction caused by intoxicated drivers.'" Ibid. (quoting State v. Marquez, 202 N.J. 485, 496 (2010)). To that end, the implied consent law, N.J.S.A. 39:4-50.2, and the refusal law, N.J.S.A. 39:4-50.4a, were enacted "[t]o improve enforcement efforts and address the high rate of refusal by motorists who decline[] to submit to blood-alcohol tests[.]" State v. O'Driscoll, 215 N.J. 461, 472-73 (2013).

Under the implied consent law,

> Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; . . . at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of [N.J.S.A. 39:4-50] . . . .
>
> [N.J.S.A. 39:4-50.2(a).]

"The police officer shall . . . inform the person arrested of the consequences of refusing to submit to such test" and "[a] standard statement, prepared by the chief administrator, shall be read by the police officer to the person under

arrest." N.J.S.A. 39:4-50.2(e). In 2009, the responsibility for the promulgation of the standard statement was transferred to the Attorney General. 41 N.J.R. 2825(a) (Aug. 3, 2009).

In tandem, the refusal statute requires police officers to request motor vehicle operators to submit to a breath test, or be charged with a violation upon their refusal. To sustain a refusal conviction under the statute, four elements must be established:

> (1) the arresting officer had probable cause to believe that defendant had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or drugs; (2) defendant was arrested for driving while intoxicated; (3) the officer requested defendant to submit to a chemical breath test and informed defendant of the consequences of refusing to do so; and (4) defendant thereafter refused to submit to the test.
>
> [Marquez, 202 N.J. at 503 (citing N.J.S.A. 39:4-50.2(e); N.J.S.A. 39:4-50.4a).]

Currently, the standard statement required to be read to motor vehicle operators to inform them of the consequences of refusing to submit to a breath test, provides, in pertinent part:

> 5. If you refuse to provide samples of your breath, you will be issued a separate summons for the refusal. A court may find you guilty of both refusal and driving while intoxicated.

8

6. If a court finds you guilty of the refusal, you will be subject to various penalties, including license revocation of up to [twenty] years, a fine of up to $2000, installation of an ignition interlock, and referral to an [IDRC]. These penalties may be in addition to penalties imposed by the court for any other offense of which you are found guilty.

[Attorney General's Standard Statement (revised and effective July 1, 2012).]

Here, it is undisputed that defendant was read the current standard statement. Nonetheless, defendant renews her arguments challenging the sufficiency of the statement, which were entirely rejected by the Law Division judge. In Quintero, we also rejected the identical contentions, stating:

Defendant's argument that she was not given an accurate picture of the penalties she faced as a first-time offender lacks merit. Rather, as [the Law Division judge] observed:

It defies logic to assume that defendant[,] having refused a breath test knowing that she could be fined up to [$2000] and lose her license for [twenty] years[,] would have submitted to a . . . breath test, if she was told her license might be revoked for only seven months with a fine of only $500.

We are satisfied that the current standard statement satisfies the statutory mandate — that is, informing motorists and impelling compliance — by adequately informing drivers of the maximum potential license revocation and fine, and the possibility of

9

ignition interlock, that they face for refusal. In so ruling, we note that adding other details, including the differing mandatory minimum and maximum penalties for first offenders, second offenders, and certain third offenders, may run the risk of submerging the most significant penalties in those details. Such a statement could confuse persons who are suspected of being under the influence, whose number of prior offenses may be unclear, and dilute the persuasive effect that is a central purpose of the standard statement.

Moreover, defendant, having refused after being informed of the maximum penalties, has not shown that she "reasonably would have made a different choice and submitted to a breath test" had additional information been provided. [O'Driscoll, 215 N.J. at 466]. It is implausible that defendant would have submitted to the breath test if informed of mandatory minimums for a first offender. Accordingly, we conclude that the current standard statement is not defective for failing to inform drivers of the mandatory minimum penalties for refusal. The standard statement provides sufficient information for drivers to make an objectively reasonable choice on whether to submit to a breath test.

[Id. at 627-28.]

Here, the fact that defendant testified during her plea allocution that she would have provided a breath sample had she been informed of the mandatory minimums for a first time offender does not dictate a different result, or demonstrate that "she 'reasonably would have made a different choice and submitted to a breath test' had additional information been provided." Ibid.

(quoting O'Driscoll, 215 N.J. at 466). If "[a]n immaterial variation from the standard form does not require reversal of a conviction for refusal[,]" then certainly an accurate reading of the form as occurred here suffices to sustain a refusal conviction. O'Driscoll, 215 N.J. at 466.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0826-18T4